GEORGE W. AMORY *vs.* JOHN A. LOWELL & others.

A testator died, leaving a daughter and two sons, and in his will gave his dwelling-house and farm, and all the personal property in use in or about them, to J. S., in trust, "after defraying all expenses of repairs, taxes and insurance, then to permit the daughter to occupy, use and improve said real and personal estate" during her life, and on her death "to permit" the sons successively "to have the use and improvement of the same" during their respective lives.  In a subsequent clause of the will, after disposing of property besides the foregoing, he gave the residue of all his estate, real and personal, to J. S., in trust until the death of the last survivor of the three children, "to take suitable care and charge of the said real estate aforesaid," and "after deducting all necessary expenses for repairs, taxes, public charges, and also any expense incurred in insuring the premises against fire," to divide " the net income of said estates" equally among them and such persons as either of them dying should by will appoint.  J. S. assumed the trusts; permitted the daughter to occupy the dwelling-house and farm, either personally, or by tenants who paid rent to her; paid annually out of the income of the residuary fund the taxes and

insurance on the dwelling-house and farm; and for twenty-three years presented to the three children annual accounts showing these payments, which they returned to him with their signatures under the word "approved." The twenty-fourth account of the trustee the younger son declined to approve, on the ground that such payments were a misapplication of the income of the residuary fund; and filed a bill in equity to restrain the trustee from defraying them out of that fund, and to recover one third of the amounts previously paid, (alleging that he approved the previous accounts under a mistake of his rights,) and to compel the making of repairs on the dwelling-house and farm. *Held*, that repairs, taxes and insurance on the dwelling-house and farm should be defrayed from rents and profits of the dwelling-house and farm, and were not proper charges upon the residuary fund or its income; but that the accounts of the trustee which the plaintiff had approved were not open to revision in this respect.

BILL IN EQUITY filed July 8, 1869, by one of the children of Francis Amory, against the trustee and other persons interested under his will.

The bill alleged that Francis Amory died in July 1845, leaving three children, Cornelia, Francis and the plaintiff, and leaving a will, which was duly proved and allowed in the probate court for Norfolk, and, after certain devises and legacies immaterial to this case, contained four successive items, the material parts of which were as follows:

"*Item* 12. I give, bequeath and devise to John A. Lowell, Henry Codman, Francis Amory, Jr., and George A. Goddard, and to the survivor and survivors of them, his heirs, executors and administrators, the dwelling-house and farm, situate in Milton aforesaid, now occupied and improved by me, containing about two hundred acres, more or less, as may appear by the title deeds; together with all the produce, stock, farming utensils, and other personal property in and upon the farm, and also all the furniture, plate, carriages, pictures, stoves, and other personal property, whether more or less, in the dwelling-house and buildings upon the same, to have and to hold the same in trust; and, after defraying all expenses of repairs, taxes, and insurance, then to permit my daughter, Cornelia Goddard, wife of George A. Goddard, to occupy, use and improve the said real and personal estate, during the term of her natural life; and at the decease of my said daughter Cornelia, then in trust to permit my son, Francis Amory, Jr., to have the use and improvement of the same for and during his natural life; and at the decease of

my son Francis, then in trust, to permit my son George W. Amory to have the use and improvement of the same for and during his natural life ; and lastly, at the decease of the survivor, to grant, surrender, and deliver over to the children of my said sons and daughter before named, who shall then be living, the trust property last aforesaid, to be equally divided among them, share and share alike."

"*Item* 13. I give and devise to John A. Lowell, Henry Codman, Francis Amory, Jr., and George A. Goddard, and to the survivor and survivors of them, their heirs, executors and assigns, all the rest, residue and remainder of the estate, real, personal and mixed, of whatever name or nature, kind or sort, of which I shall die seised and possessed ; to have and to hold the same, as joint tenants, to and upon the following uses, trusts and purposes : that for and during the life of the children of the said Francis Amory, living at his decease, and during the life of the survivor of them, the said trustees, their heirs and assigns, shall and will take suitable care and charge of the said real estate aforesaid, and from time to time make such leases of the premises, or any part thereof, upon such terms, time and conditions as they shall think proper and most beneficial for my children ; and, after deducting all necessary expenses for repairs, taxes, public charges, and also any expense incurred in insuring the premises against fire, the net proceeds or net income of said estates they will divide equally among my children, towards their support and maintenance ;" " provided, however, it is understood that whenever any of my said children shall decease, their share of said income, during the life of said survivor, shall be appropriated in such way and manner, to such uses, as by any last will and testament, or by any appointment in writing revocable as a will, they may order and direct, and if there be no children and no will or appointment, the same shall enure as on a strict settlement, and with like limitations, to the use of my surviving child or children."

"*Item* 14. And said devise is on this further use and trust, that, from and after the decease of my surviving child, the said estate hereinbefore devised to my said trustees shall be equally

distributed and divided among the children of said sons and daughter, share and share alike; or if any such will or appointment shall have been made by my said children, the disposal, order and direction of such will or appointment touching the said reversion shall be observed and followed;" "and if there be no children as aforesaid, nor any will or appointment concerning the premises, then on strict settlement as aforesaid, and under the same limitations, in trust for my surviving child and his and her heirs."

"*Item* 15. I do hereby declare that if only one of my said trustees before named shall be willing to accept the trust, the foregoing devise is hereby made to him only, his heirs and assigns, in trust, to and for the uses, trusts and purposes aforesaid."

The bill further alleged that the defendant Lowell alone, of the four trustees named in the first two items above quoted, accepted the trusts in said items declared; that he continued ever since in the execution thereof; that all of the real estate and personal property named in item 12 came into his possession, and had ever since continued therein; that he was making no such use of said real estate as to secure any income from it to defray the expenses of repairs, taxes and insurance thereon; that he had permitted various acts of waste thereon, in the improvident cutting of wood and otherwise, and had suffered the land to deteriorate for want of proper husbandry, and the dwelling-house, farm buildings and fences to become dilapidated for want of proper repairs; that he had paid out of the residuary fund created by item 13 the expenses of taxes and insurance on said real estate named in item 12, during the whole past term of the trust; that on April 17, 1869, the plaintiff, having during the month previous been informed for the first time of the duty and liability of the trustee in the premises, requested him to cause the needful repairs to be made, and to refund to the plaintiff one third of the amounts so paid for taxes and insurance, with interest; but that he declined to comply with these requests, and pretended that he was under no duty or liability to make repairs or cause them to be made on the dwelling-house

and farm, and that he had a right to defray the expenses of taxes and insurance thereon out of the residuary fund; wherefore the bill prayed for a decree to compel the trustee to refund the sums demanded by the plaintiff, and that the trustee might be instructed and directed as to his duty in all the premises, and for general relief; and the testator's daughter Cornelia and son Francis, together with the grandchildren living, and a guardian *ad litem* of persons not in being to whom contingent interests might be devised by the will, were joined with the trustee as defendants.

All the defendants appeared and answered; and in their answers admitted the plaintiff's allegations of the provisions of Francis Amory's will, and submitted themselves to the judgment of the court.

Lowell, in his answer, denied that the real estate named in item 12 of the will could have been managed by him so as to yield an income to pay the expenses of repairs, taxes and insurance thereon, and at the same time have permitted the testator's daughter to occupy, use and improve it, or that it could be leased for a rent equal to those expenses; alleged that it was the testator's intention that those expenses should be defrayed from the income of the residuary fund, and that the plaintiff had acquiesced in that course of payment as to taxes and insurance, and had approved accounts rendered by the trustee in which they had been so charged; alleged, as to the personal property in and about the dwelling-house and farm, that he had permitted the testator's daughter to hold and use it; denied the plaintiff's allegations of waste and neglect in the management of the farm, but admitted that some of the buildings needed repairs; and prayed for instructions whether he should make such repairs and pay for them out of the income of the residuary fund, as the testator's daughter sometimes claimed that he should do.

The testator's daughter admitted that she was holding the personal property referred to in item 12 of the will, and ever since the testator's death had occupied the farm herself, or taken the rent of it; denied the plaintiff's allegations of waste in its management: alleged that she had spent the greater part of the

rents she derived from it, in improvements and keeping it in good condition; denied that any of the buildings had been suffered to remain without repairs, except such as were not needful for the proper conduct of the farm; alleged that the proceeds of whatever wood had been cut and sold from the farm had been applied by her towards expenses she had incurred in repairing and altering the other buildings; admitted that the dwelling-house and principal barn were now in need of repairs; and prayed that the trustee might be directed to make such repairs and charge them to the residuary fund, and also reimburse to her out of that fund the excess of her own disbursements for repairs over the amounts received by her from the sale of wood as aforesaid.

Issue was joined on the answers, and the case heard by *Colt*, J., and reported substantially as follows:

The total of the appraisement of the testator's estate, real and personal, in the inventory returned by the executor, was $203,800, all of which except $7,325 was appraised on real estate; and the debts amounted to $60,000. The dwelling-house and farm in Milton were appraised at $10,000. The farm contained a hundred and seventy acres, and on it, besides the dwelling-house, which was built of wood, were a wooden barn and other wooden buildings, useful and necessary in carrying on the estate as a farm, some of which were of considerable age. All the real estate left by the testator has greatly increased in value since this appraisement.

Ever since assuming the trust, the trustee has allowed the testator's daughter to occupy the dwelling-house and farm, and, when not personally occupying them, to collect and retain the rents of them. He has paid out of the income of the residuary fund the taxes and insurance on the dwelling-house and farm, and presented yearly accounts to the plaintiff and the other children of the testator, in which those expenses were charged against that income, and which the children returned with their signatures under the word "approved." She has paid for all the repairs and improvements which have been made on the dwelling-house and farm during her occupancy; and the barn

and some of the other buildings are in need of extensive repairs.

"The defendants offered evidence that said Milton estate could not have been so managed and occupied by the testator's daughter as to produce income sufficient to pay taxes, insurance and repairs. The plaintiff offered evidence to the contrary; and also to the fact of waste in the improvident cutting of wood and neglect of buildings and fences, and contended that the trustee was responsible therefor. The plaintiff further offered evidence that he assented to the accounts of the trustee under a mistake of his rights, and that the last account of the trustee, covering a time anterior as well as subsequent to the filing of the plaintiff's bill, was not assented to by him; and he contended that the taxes and insurance on the Milton estate should have been paid out of the income thereof, and not out of the income of the residuary fund. Without going into a hearing of the evidence offered, I reserve the case, with the above offers of proof, for the consideration of the full court, for such order thereon as law and justice may require."

*W. E. Parmenter & A. G. Browne, Jr.*, for the plaintiff.

*C. W. Loring*, for the trustee.

*H. W. Holland*, for some of the grandchildren.

AMES, J. It is manifest that it was not the expectation or intent of the testator, that any part of the income which, by the terms of the will, was to be divided among his children, should in any event be derived from the dwelling-house and farm in Milton. On the contrary, that portion of his property was set apart for the exclusive enjoyment of his daughter Cornelia during her life, and after her decease for that of each of his sons, in succession. It is equally manifest also, that he intended that all the income which the trustees, under such management as they should think most beneficial for the testator's children, hould derive from all the "residue and remainder" of his property, should be divided equally among them, "towards their support and maintenance," after deducting all necessary expenses for repairs, taxes, public charges and insurance. The fund which the will describes as divisible from time to time among them is

spoken of as the net proceeds, or the net income, of the estates which the trustees are required to manage and take charge of, and of which they are to make such leases, upon such terms, time and conditions, as they shall think proper and most beneficial for the parties in interest. We find nothing in the will that affords any support to the claim that any portion of that income was to be given or appropriated by the trustees to the purpose of improving the estate at Milton described in the twelfth section of the will, or to the payment for any repairs or other charges upon that estate. The net income spoken of in the thirteenth section can only mean the amount of rents and profits remaining after the payment of taxes, insurance and repairs chargeable against the property from which those rents and profits are to be derived, that is to say, the property described in the thirteenth section. With regard to the dwelling-house and farm at Milton, the trustees are to hold the title, and, after the termination of all the intervening life estates, are to divide the property among the testator's grandchildren; but it does not appear that they are to have anything to do with the use and occupation in the mean time. The twelfth section directs the trustees, after defraying the expenses of repairs, &c., to permit his daughter to occupy, use and improve that portion of the estate during her life. But, taking this clause of the will in connection with the obvious meaning of the thirteenth section, we do not interpret it as a direction to the trustees to pay these expenses themselves, or as signifying that funds from any other portion of the property shall be used to pay them, but as intending that the occupant of that dwelling-house and farm shall bear the burden of these charges. The result is, that the trustees, in paying any portion of these charges out of the income derived from the property described in the thirteenth section, would be acting under an erroneous interpretation of the will, and would have no right to charge any such payment in their accounts with the children of the testator.

We are equally clear, however, that all the accounts heretofore presented by the trustee, to which this plaintiff has assented by his signature under the word "approved," must be

considered as no longer open to revision or objection. The plaintiff does not suggest that he was misled by any conduct on the part of the trustee, or that he labored under any mistake of fact. The mistake was mutual, in a case where all the parties had equal means of knowledge as to their relative rights and duties; and there seems to be no ground of law or equity for the interference of the court, for the purpose of disturbing a long series of deliberate and fair settlements.

Our conclusion therefore is, that the annual charges of taxes, insurance and repairs, upon the farm and homestead in Milton, are to be paid from the rents and profits of that estate, and that there is no other fund in the hands of the trustee upon which those expenses are a legitimate charge. The payment of those expenses appears to us to be one of the burdens which the testator has connected with the occupation of that part of the estate. The life tenant is under no obligation personally to occupy it, but is at liberty to rent it upon such terms as she can. If, as suggested in the answer, it cannot be rented on such terms as to keep down those expenses, the remedy for that inconvenience is not to be found in appropriating funds which by the terms of the will are not subject to that kind of charge.

In the actual posture of the case, it must be sent to a master, to inquire and report what is the condition of the estate in Milton, and to what extent are repairs and renovations necessary; what is its capacity to produce an income; and whether the rents and profits that it is capable of producing are sufficient to defray the expense of taxes, insurance and repairs; whether wood and timber have been cut down and removed since the probate of the will, and whether to such an extent or under such circumstances as to amount to waste; and what amount, if any, the trustee has diverted from the share of the income payable to the plaintiff and expended upon the farm at Milton since the rendition of the last account upon which the plaintiff indorsed his approval. And all further directions in the case are reserved till the coming in of his report.

*Ordered accordingly*