PATTERSON v. VIVIAN et al.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

1. TRUSTS (§ 274*)—EXECUTION OF TRUST—PRINCIPAL AND INCOME—TAXES.
    Where an unimproved tract of land, a part of the general estate of testator, left to his executors, in trust, with power of sale to be exercised in their discretion, which was worth at the time of testator's death $22,500, was retained for a long time by the trustees and taxes paid thereon, and then sold, the appreciation in value was not income, and the taxes were properly charged against the income of the general estate.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 390; Dec. Dig. § 274.*]

2. TRUSTS (§ 274*)—EXECUTION OF TRUST—INVESTMENT OF PROPERTY—LOSS—APPORTIONMENT BETWEEN PRINCIPAL AND INCOME.
    Where a wife was given a life estate in personal property with a remainder to trustees for the life of a daughter to pay her the income, and, by consent of all parties, the personal property was sold and the proceeds invested in a mortgage, which was foreclosed and bid in at a loss, and a deficiency judgment entered for the balance, there was no basis for apportioning between principal and income such paper loss before the property was actually sold, or for dividing the proceeds of a future sale of the property.
    [Ed. Note.—For other cases, see Trusts, Cent. Dig. § 389; Dec. Dig. § 274.*]

3. TRUSTS (§ 226*)—MANAGEMENT OF ESTATE—PAYMENT OF TAXES.
    Though one of the two trustees of an estate is a nonresident, and the trustees pay the entire personal property tax assessed against both trus-

tees without question, still the amount will not be charged against them, since refusal to pay might have invited a closer scrutiny and resulted in an increased assessment.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 323; Dec. Dig. § 226.*]

4. WILLS (§ 614*)—CONSTRUCTION—ESTATES CREATED—LIFE ESTATE.

Where testator devised to his wife the use and enjoyment for and during her life of the homestead and personal property connected therewith, and distinctly designates in another clause of the will the estate given the wife as a "life estate," the estate given is a life estate, and not a mere use of the property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1393–1416; Dec. Dig. § 614.*]

5. TRUSTS (§ 274*)—EXECUTION OF TRUST—CHANGE IN FORM OF ESTATE—PAYMENT OF TAXES.

Testator devised to his wife a life estate, and not merely the use in the homestead and the personal property therein, such as furniture, horses, stable furniture, etc., and devised his general estate to trustees, and provided that the trustees should pay the taxes assessed against the realty and personalty, so that the wife would not be burdened therewith. In a suit having all the parties before it, including the wife and remaindermen, the homestead and also the personalty were sold and the proceeds divided into the homestead fund, and the personal property fund. *Held*, that the transaction constituted a substitution by consent, and was not a release of the life estate by the widow; and hence taxes charged against the funds or the property in which the funds were invested were still chargeable against the general estate as provided by the will.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 390; Dec. Dig. § 274.*]

6. TRUSTS (§ 274*)—EXECUTION OF TRUST—REPAIRS—APPORTIONMENT.

Where, by will, taxes against personal property devised to the wife for life were made a charge against the general estate, and no other provision was made, and the personal property was sold and the proceeds invested in a mortgage which was foreclosed and the property bid in, repairs of the property which stands in lieu of the personalty cannot be charged against the general estate, since there was no provision for charging the repairs of the personalty against the general estate.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 390; Dec. Dig. § 274.*]

Miller and Clarke, JJ., dissenting.

Appeal from Special Term, New York County.

Action by John F. Patterson, as trustee, against Susan L. Vivian and others. From the judgment rendered (63 Misc. Rep. 389, 117 N. Y. Supp. 504), defendants file cross-appeals. Reversed.

Cross-appeals from a final judgment in an action brought by one of the trustees under the last will and testament of Marshall O. Roberts, deceased, from an intermediate accounting. By the second clause of his will, the testator gave to his widow, the defendant Vivian, "the use and enjoyment for and during her life" of the family residence on Fifth avenue, including two houses and the adjoining grounds and stable, together with the household furniture, books, pictures, silver, jewelry, etc., and the horses and stable furniture. By the fifth clause of the will he directed his executors out of his estate and the rents and profits thereof to keep said premises in suitable and proper repair, and to keep the houses, stables, and personal property insured during the life of the wife, so that she should not be at any expense on account thereof. He also directed the executors to pay all taxes and assessments which might "be assessed or be chargeable upon said real estate and upon the pictures and other personal property in the said houses and stables during the said time." By the sixth clause of his will he directed his executors to set apart out of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

principal of his estate sufficient to produce an annual income of $40,000, which he bequeathed to them in trust to pay the income thereof to his wife in lieu of dower. By the seventh clause, as modified by the codicil, he gave the residue of his estate to his executors in trust during the life of his widow and a daughter, Mary M. Roberts, annually to pay out of the income thereof a stated sum to four children. By the eighth clause he directed that in case the net income of his estate, after paying taxes, assessments, etc., was insufficient to provide the last-named sums, there should be a pro rata deduction therefrom, and that, if there should be a surplus, it should be divided in the manner stated. By the ninth clause he gave the residence and personal property referred to in the second clause to his executors in trust, subject to the life estate of the wife, to hold the same during the life of the daughter, Mary M. Roberts, upon the trusts described in the eighth clause, with a direction that the trustees or trustee "who may then survive" sell and dispose of the personal property or such portion thereof as in their, or his, judgment may properly be sold and disposed of. By the eleventh clause of his will he gave his executors power of sale in their discretion "as to any property over which they, in that character and capacity, are given the control and management."

The widow remarried, and took up her residence in England, and the question then arose what disposition should be made of the family residence and the personal property of which she was given the life use. A friendly suit was brought in 1896 for the instruction of the court and for a decree authorizing the sale of the personal property. All parties appeared in that action, the infant son, Marshall O. Roberts, by guardian ad litem. A decision was made in which it was found that it was for the interest of all parties that a sale be had, and "thereby the estate of the infant will be relieved from its share of the expenses of maintaining the property in its present condition, and said infant will, upon the final distribution of the estate, receive a larger sum than if the said property be held until the death of the life tenant," and that all except the infant assented thereto. A judgment was entered upon that decision, directing a sale of the property and the investment of the proceeds in the kind of securities, directed by the testator for the investment of his estate, the payment of the income so invested to the defendant Vivian during her life, and the distribution of the principal upon her death according to the terms of the will. The personal property was sold, realizing net the sum of $57,704.77, $55,-000 of that was invested by the trustees in their name in a real estate mortgage. The balance was deposited in a bank. The mortgagor made default, the mortgage was foreclosed, and the mortgaged property, two houses referred to in the record as the West End avenue houses, was bid in by and in the name of the trustees for $50,000, and a deficiency judgment was taken against the mortgagor for $11,299.17. That judgment is worthless. The property was left vacant until it could be rented upon suitable terms, and substantial repairs had to be made, with the result that on the date taken for the settlement of the trustees' accounts the total rents received were $5,007.56 less than the payments for expenses, taxes, and insurance and repairs; that deficit had been made good by the trustees from the principal of the general estate. In 1899 another friendly suit was brought for the purpose of procuring a sale of the family residence. In that as in the other suit all appeared, the infant by guardian ad litem, and a somewhat similar decision was made, which recited that the defendant Vivian was given the use and enjoyment of said real estate during her life, and that the executors were directed to keep the premises in repair and to pay all taxes and assessments thereon; that it was for the interest of all parties that the premises be sold; that all except the infant defendant assented thereto; and that, by a sale and the investment of the proceeds, "the estate of the infant will be relieved from its share of expenses of maintaining the property." It was also found that the property could then be sold to a better advantage than at a later period, and that "such sale will relieve the estate from a large expense for care and maintenance thereof." Upon that decision, a judgment was entered, authorizing and directing a sale of the property for $500,000, and the investment of the proceeds of the sale in the kind of securities directed by the testator for the investment of his estate, the payment of income thereon to the defendant Vivian for and during her life, and, upon her death, the distribution of the principal according to the terms of the will. The judgment in that action did not purport to construe the

will. A contract of purchase and sale had theretofore been made by the executors with one Corn, but he refused to take title without an adjudication that the executors had the power to sell, whereupon another action was brought, the same persons being parties, which resulted in a judgment construing the will, and adjudging that the executors did have the power of sale of the remainder and the defendant Vivian the power to sell her life estate, and directing that a sale be made, and that the proceeds be invested in the manner prescribed in the will, and that "the net income thereof" be paid to the defendant Vivian during her life, and, upon her death, that the principal should be distributed in the manner provided by the will. A sale was made for $500,000, which, together with the sum of $300,000 from the general estate, was invested by the trustees in an $800,000 bond and mortgage taken in their name. In her answer, filed in the suit last above mentioned, the defendant Vivian alleged "that the care of said premises, including the necessary insurance thereon, the keeping of the same in repair, and the payment of taxes thereon, is a source of large expense to the estate of said Marshall O. Roberts."

By the judgment appealed from, the personal taxes paid by the trustees were apportioned between the general estate and the special trust fund of $500,000, which has been styled for convenience the "homestead fund." The taxes assessed on the real property, purchased on the foreclosure of the $55,000 mortgage, amounting to $5,504.25, and the premiums for insurance thereon, amounting to $292.50, were charged to the income of the special trust, created by the sale of the personal property, styled for convenience the "personal property fund." The amount taken from the principal of the general estate to make good the deficit of receipts from the personal property fund was directed to be repaid $2,375.52 from the principal of the personal property fund and $2,632.06 from the income of that fund as realized. The personal assessment was against both trustees as such for an amount at all times less than one-half the amount of personal property assessable against the resident trustees. The trustees paid the taxes without objection each year. The judgment undertakes to provide a basis of apportioning between principal and income the proceeds realized in case of a future sale of the houses belonging to the personal property fund.

The testator owned an unimproved tract of land on Columbus avenue in the city of New York, worth $22,500 at the time of his death, which was retained by his executors until 1902, and then sold for $200,000. Meanwhile taxes thereon amounting to $24,344.07 had been paid from the general income.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Selden Bacon, for appellant Vivian.
George A. Strong, for respondents Roberts and Van Wart.
William W. Ladd, for respondent Marshall O. Roberts.
Henry Thompson, for respondent Patterson.

MILLER, J. All but one of the questions presented on this appeal may easily be disposed of.

The Columbus avenue lots formed a part of the general estate of the testator, left to his executors in trust with the power of sale to be exercised in their discretion, and until sold remained a part of the capital of the estate. Appreciation in value is not income. The cestuis que trustent have not contributed the taxes, as is contended, because they were entitled only to what was left after the payment of such taxes. There is no question but that the discretion of the executors has been wisely exercised, and, as a result, such cestuis que trustent will now receive an income on $200,000. Cases arising upon investments made by trustees have no application. The appellants Van Wart and Roberts cite Matter of Rogers, 22 App. Div. 428, 48 N. Y. Supp. 175, and rely upon certain expressions in the opinion of Cullen, J.,

wholly apart from their context. That case dealt with the distribution among stockholders of certain assets of a dissolved corporation and of the stock of a new corporation organized to take over the plant and the business of the old one. The nature of the transaction itself, rather than the will of the testator, determined whether the distribution was of capital or income.

There was no basis for apportioning between principal and income a paper loss sustained upon the foreclosure of the $55,000 mortgage or for dividing the proceeds of a sale which has not yet occurred. The foreclosure of the mortgage resulted merely in a change of the form of the investment. In place of the mortgage, the trustees have real estate and a deficiency judgment. Whether there will be a loss or a gain can be determined only when the property is sold, and it will be time enough then to make an apportionment. It was stipulated that the referee should determine all questions raised by the answer of the appellant Vivian; but, before making an apportionment, he had to decide the preliminary question whether one should be attempted at all.

· Doubtless, the trustees could have been required to pay only one-half of the personal taxes assessed against them, as one was a nonresident. Refusal to pay, however, might have invited a closer scrutiny by the taxing officers, and have resulted in an increase of the assessment. The trustees, believing it to be for the interests of their estate, paid the taxes as assessed without question. Common experience indicates that they were prudent, and they should not be penalized for it. The fact that they might successfully have resisted the payment of one-half of the taxes assessed in any given year does not establish that as between them and the estate the payment without objection was wrongful, or that the estate thereby ultimately suffered a loss.

The testator did not direct his executors to make repairs to the household furniture. Upon no theory, therefore, could they be justified in using either principal or income of the general estate to make repairs to the West End avenue houses belonging to the special personal property trust, and it is immaterial now whether such repairs were betterments or ordinary repairs, because neither principal nor income of the general trust estate created by the testator can be used for ordinary repairs or betterments to real property belonging to a special trust, created apart from, and independent of, the will. When the property is sold or when the trust terminates, it will be time enough to determine the equities between the principal and income.

The accounts of the executors were adjusted as of the 1st day of January, 1907. The real property belonging to the personal property fund produces a gross income of $3,700 a year. The question of the repayment to the general fund of $2,632.06, directed to be paid out of the income of the personal property fund, is apparently of no importance now; and it is unnecessary to consider whether the appellant Vivian should have been required personally to make the general estate good.

We come now to the only difficult question in the case. Must the two special trusts bear their own burdens, or are the taxes and insurance premiums to be paid out of the general estate? A preliminary question is presented whether the personal assessment against the ex-

ecutors and trustees under the will of Marshall O. Roberts, deceased, covers or includes the $500,000 special trust fund. No doubt, as the appellant Vivian contends, that trust was created apart from the will, and other trustees might have been selected. But, in fact, the executors and trustees under the last will and testament of Marshall O. Roberts, deceased, were nominally as such designated as trustees of the special trusts. It is immaterial that that may have been merely descriptio personarum. By that name, they held the legal title to the mortgage given to secure the $500,000 fund, as well as the $300,000 belonging to the general estate. They were therefore assessable as such, both for the special trust fund and the personal property belonging to the general estate, and, while we cannot know precisely what items of property the assessors considered, in legal contemplation the assessment must be deemed to have been made on account of all the property for which the trustees as such were liable to assessment.

Another contention of the appellant Vivian may also be dismissed, viz., that the payment of the taxes, etc., on the special trust funds was required by the eighth clause of the will. Plainly that clause was intended only to provide for a possible deficiency or surplus of income required by the seventh clause. Standing alone, it could refer only to the general estate; and by no permissible construction could it require the payment from the general income of taxes, otherwise chargeable on the life tenant. See De Witt v. Cooper, 18 Hun, 67; Matter of Shipman, 82 Hun, 108–115, 31 N. Y. Supp. 571; Matter of Albertson, 113 N. Y. 434, 21 N. E. 117; Amory v. Lowell, 104 Mass. 265. No doubt, the defendant Vivian was given a life estate in the real and personal property in question, and the general estate was charged with the payment of taxes and insurance thereon, and with the maintenance in repair of the real property. She could have occupied or leased the property, and she could have sold her interest therein, the purchaser taking it freed from the burden of taxes, etc. So much, in legal contemplation, the testator must have known, although it is reasonably plain that he charged his general estate with the payment of taxes, etc., for the purpose of enabling her to occupy the family residence without intrenching upon her income of $40,000. That he expected her to occupy the residence and use the furniture may be inferred, and he said that he did not wish her to be at any expense on account thereof; in other words, he wished to free her from the necessity of using any part of her $40,000 income to maintain the property in which he gave her a life estate. His direction was that the executors pay the taxes assessed on specific property—i. e., "said real estate and upon the pictures and other personal property in said houses and stables"—and he expected that specific property to remain a part of his estate until the termination of the life estate.

He disposed of the property in question as follows: A life estate to the wife; remainder in trust to the executors; the ultimate remainder in fee to persons named. The general power of sale to the executors was of all property over which they were given control and management. Plainly they had not control or management of this property during the life term, and there was a specific direction with reference to a sale of the personal property given to the trustees or

trustee "who may then survive," obviously referring to the termination of the life estate. In case of any sale by the life tenant or by the ultimate remaindermen or by both together, which the testator could have contemplated, the specific property upon which the testator directed taxes to be paid would, because of the intermediate trust estate, have remained subject to the direction for the payment of taxes, etc., until the termination of the life estate. He did not provide for the making of repairs to, or the payment of taxes on, substituted property. He did not authorize, but may well have supposed that he had effectually prevented, a substitution. However, if the adjudication, assented to by the parties for the purpose of a sale, that the executors had the power to sell during the life term, be regarded as a binding adjudication, in the light of which every provision of the will must be construed, still the appellant is no better off, for then, though a substitution of property was contemplated by the testator, he confined his direction to specified property. A direction to pay taxes on household furniture cannot be construed as a direction to pay taxes on improved real property; and a direction to make repairs to, and to pay taxes on, the family residence, cannot be construed as a direction to pay taxes on a real estate mortgage or to make repairs to any sort of property which might belong to a trust created on a sale of such residence. Upon the sale of the residence in this case, the trustees took an $800,000 building loan mortgage on the property; the grantee erecting in place of the house a 14-story building. Five hundred thousand dollars of that mortgage belongs to the special trust, and $300,000 to the general estate. Suppose that mortgage should have to be foreclosed and the property bid in; is it conceivable that the special trust would be entitled to its proportionate share of rents, freed from any burden of maintenance, simply because the testator directed that the family residence be kept in repair, insured, and the taxes on it paid, so that the wife should not be put to any expense on account thereof? In place of occupying the residence and using the furniture, the widow now has a handsome income from two special trusts in addition to the $40,000 income secured to her by the testator. The fact that the internal evidence of the will plainly shows that the testator's purpose in making the direction in question was to enable the widow to have the personal use of the residence, furniture, etc., without intrenching upon her $40,000 income, is a cogent, if not a controlling, reason for not extending that direction to a case which the testator did not contemplate, or, contemplating, did not provide for.

The parties having seen fit to create a situation apart from the will, their rights must be determined by the acts creating that situation, to be construed no doubt in the light of the will. As shown by the pleadings and the findings, referred to in the statement of facts, one of the reasons for a sale was that thereby the general estate would be relieved of the burden of care and maintenance; and the only burden of care and maintenance on the general estate was that imposed by the direction in question. Care and maintenance as interpreted by the defendant Vivian in her answer filed in the last suit included the payment of taxes and insurance premiums. The final judgment directed the payment of "net income." It cannot be assumed that the word

122 N.Y.S.—23

"net" was used by mistake or inadvertence. Moreover, the income of a trust, payable to the cestui que trust, means what is left of receipts after meeting the expenses of the trust; and, if the word "net" had not been used, the word "income" construed with reference to the declared purpose of freeing the general estate from the burden of care and maintenance could only mean such income as is ordinarily paid to a cestui que trust; i. e., "net income." No doubt, as the appellant contends, for the purpose of ultimate distribution, the property belonging to the special trusts is to be deemed as substituted for the property specifically devised by the testator. But it by no means follows that there has been a substitution for all the purposes of the will. In fact, there has not been. The life estate has been extinguished. The appellant is now a cestui que trust, entitled to the income of a trust fund, created wholly apart from the will. She is no longer a life tenant by virtue of the provisions of the will. In fact, she has sold her life estate for the income of a trust, and the purchase price, which she has stipulated for, must be deemed to have been intended as the purchase price of her entire interest, which was the right to the life use of the property, freed from the burden of paying taxes. So far as she is concerned, the case is the same as though she had sold her life estate for a lump sum. It is unnecessary to decide what the situation would have been in the case of an involuntary sale of the property— e. g., the foreclosure of a mortgage, executed by the testator, assuming there was one, leaving a surplus, paid over to the life tenant upon her security—because we have no such case. Here the rights of the parties have been fixed by their voluntary agreement. If the appellant desired gross income, she should have exacted it. In place of doing that she has assented to the sale of the property and the payment to her of the net income of trust funds, upon the ground, among others, that the general estate will thereby be freed from the burden of care and maintenance; i. e., of carrying out the direction contained in the fifth clause of the will.

So much of the judgment as undertakes to apportion between principal and income the sum to be realized on a sale of the West End avenue houses should be stricken out, and, as thus modified, the judgment should be affirmed, with costs to all parties to the appeal, payable out of the estate.

CLARKE, J., concurs.

SCOTT, J. I concur entirely with the opinion of Mr. Justice MILLER, except as to the payment of the taxes upon two funds which have been designated throughout the case as the "homestead fund" and the "furniture fund." Both of these funds arose from the sale of property which the testator gave to his widow, the defendant Susan L. Vivian, for life. The gift is expressed in the second clause of the will, which reads as follows:

"Second: I give and devise to my beloved wife, Susan Lawrence Roberts, the use and enjoyment, for and during her life, of my two houses, now known as numbers 105 and 107 Fifth avenue, in the city of New York, and now occupied by me as a family residence, with the stable and lots of ground used and occupied therewith, on East Eighteenth street, in the rear of said houses. I

also give and bequeath to my beloved wife, Susan Lawrence Roberts, for and during her life, all the household furniture, useful and ornamental, of every kind, and description, books, pictures, gold plate and silver plate and jewelry that shall be in my houses aforesaid at the time of my decease; and also all my horses, carriages, harness, saddles, bridles, blankets and articles provided for use in the stables in the care of the horses, or with the horses and carriages."

If the language of this clause left any doubt as to the nature and extent of the interest thus given to the widow (which I do not suggest), such doubt was finally and conclusively resolved and determined, so far as concerns the parties to this action, by the several judgments dated, respectively, June 22, 1896, March 9, 1899, and March 5, 1900. The first-mentioned judgment authorized the sale of a portion of the personal property referred to in the foregoing paragraph of the will, and the two last-mentioned judgments authorized a sale of the real estate mentioned in said paragraph. It is true that in neither of the actions in which those judgments were entered was there in terms a prayer for the construction of the will, nor did either decree in terms construe it, but the form of the judgments, the relief granted, and the disposition made of the funds derived from the sale of the property imply inevitably a holding by the court that the testator had given to his wife a life estate in the real estate and personal property mentioned in the second paragraph of his will, and not merely a right to use and occupy the property. Indeed, in other paragraphs of the will, notably in the fifth and ninth, the testator distinctly designates the estate given to his wife in the house and furniture as a "life estate." The remainder of the estate, after some legacies, and the gift of the life estate to his wife, the testator gave to his executors in trust, with directions to hold it and apply the income as in the will directed, and, in considering the question I am now discussing, it is well to keep constantly in mind that the will cut out and segregated the life estate given to his wife, and that all that passed to the trustees was so much of the testator's estate as was left after the life estate had been set apart. The gift of the life estate carried with it the right of the possession of the property to which it was attached, subject only to proper security or other provisions to insure the integrity of the remainder when the life estate terminated. Upon his general estate, bequeathed to his trustees, the testator imposed several charges for the benefit of his wife. Among other things he directed his trustees, by the fifth paragraph of the will, out of the estate and the rents and profits thereof (thereby meaning the estate given to the trustees) to keep the house in proper repair, and to keep the house and stables and personal property insured in a proper amount, "so that my said wife shall not be at any expense on account thereof." He then provided as follows:

"And I direct my said executrix and executors to pay all taxes and assessments which may be assessed upon or be chargeable upon the said real estate and upon the pictures and other personal property in the said houses and stables during the same time."

The property thus enumerated upon which taxes and assessments were to be paid was the property in which the wife was given a life estate, and the "same time" during which such taxes and assessments

were to be paid was the lifetime of the wife. So the effect of the will was that the wife was given a life estate in certain specified real and personal property, and the general estate was charged with the payment of the taxes and assessments upon said property during the continuance of the life estate. After some years the testator's widow remarried, and went abroad to live, and the conditions surrounding the real estate so changed that it was more valuable and desirable as a site for a business building than for a private dwelling. In order to remove any doubts as to the authority of the trustees to sell the real estate, an action was begun to which the same persons were parties as are parties to this action, and resulted in a judgment authorizing a sale of the property. It was provided in the judgment that the executors and trustees of said decedent should invest the proceeds of the sale and pay over the income of said investments to testator's widow, then Susan L. Vivian, for and during her life. A second action of the same general nature was commenced and prosecuted to judgment for the purpose of making certain possible remaindermen parties to the judgment. The property was accordingly sold, and the proceeds invested in bond and mortgage. Since the testator's widow at this time owned absolutely a life estate in the property which she could have sold, but could not be compelled to sell, it is manifest that no sale of the entire property, life estate, and reversion together could be made without her assent, and that assent she gave upon condition (as was afterwards provided by the judgment) that "the proceeds thereof can be invested and the income therefrom paid to her during her life." Under these circumstances, it seems to me to be clear that there was neither a sale, nor an abandonment, nor of a release of the widow's life tenancy, but merely the substitution, by common consent, of the proceeds of real estate for the real estate itself, and that the widow retained precisely the same estate with respect to the substituted fund that she had held and enjoyed with respect to the real estate. If so, I can see no reason why the provision for the payment of taxes thereon out of the general estate is not still applicable. The testator's purpose was that his widow should enjoy her life estate free from taxes. He may or may not have anticipated the possibility that the form of the property to which the life estate attached might be changed. That seems to me to be immaterial. At all events, it has legally been changed, but, if the life tenant is now required to pay the taxes out of the income, she will be realizing less than the testator gave her. The order appealed from and the opinion of my Brother MILLER proceed upon the theory that by consenting to the sale of the real estate, and the intrusting of the proceeds to the same persons who are trustees under the will, the widow relinquished her position as a life tenant, and became merely a cestui qui trust of the fund derived from the sale of the property. With this view I am unable to concur. It finds its sole support in the fact that the persons designated to hold the principal fund during the continuance of the life tenancy were the executors named in the testator's will. This choice was doubtless dictated by motives of convenience, but the court might equally well have selected another custodian. If it had, the present question would not have seemed difficult. The purpose of intrusting the fund to the trustees was not to

throw the whole fund into the general estate, freed from the widow's life estate, and the judgment does not so provide. The only purpose was to preserve the principal, so that, when the time came, it should be available for distribution to the remaindermen. I am therefore of the opinion that the fifth clause of the will still remains operative, and casts upon the general estate the burden of paying the taxes, if any there be, levied upon the fund of $500,000 in which the defendant Vivian has a life estate.

Indeed, I am by no means satisfied that this fund has ever been taxed. The personal taxes, a part of which are sought to be imposed upon the homestead fund, are assessed against "John F. Patterson and Susan L. Vivian, as executors and trustees, estate of Marshall O. Roberts." If I am correct in the views already expressed that the homestead fund is held by Mr. Patterson and Mrs. Vivian as custodian appointed by the court, and not as executors and trustees under the will of Marshall O. Roberts, and that the fund, or at least Mrs. Vivian's life estate in it, constitutes no present part of the estate of the testator, it is not included, in terms, in the assessment, and as the assessable estate, outside of the homestead fund, is much larger than the amount of the assessment, there is no presumption that that assessment included the homestead fund.

The same considerations lead to the conclusion that the income of the general estate should bear and pay the taxes and insurance upon the property in which the furniture fund has now perforce been invested. The will, however, does not provide for payment by the general estate of the necessary repairs upon the furniture and personal property, and such repairs upon the property representing the furniture should not be charged against that estate.

The judgment appealed from should therefore be reversed with costs and disbursements to all parties payable out of the estate, and the matter remitted to the Special Term to recast the accounts in conformity to this opinion.

INGRAHAM, P. J., and LAUGHLIN, J., concur.