ing to make any repairs. It does not appear that there was any consideration for his subsequent promise to make them. It does not appear that the leak was caused by any negligent work of the defendant. Therefore no cause of action whatever was shown against defendant, and the judgment against him was an error.

The judgment of the county court and of the justice should be reversed, with costs in both courts and costs of this appeal. All concur.

(15 App. Div. 285.)

## In re CORNELL'S ESTATE.

### In re YOUNG.

(Supreme Court, Appellate Division, Third Department. March 3, 1897.)

TRUSTS—COMPENSATION OF TRUSTEE—AGREEMENT WITH BENEFICIARIES.

A trustee whose duty under the will is to account for the "net income realized from the estate" cannot be allowed on his accounting for a sum which the beneficiaries agreed that he might retain for his services in addition to his commissions, unless such sum was to pay for extra services.

Putnam and Merwin, JJ., dissenting.

Appeal from surrogate court, Ulster county.

Judicial settlement of the accounts of Horace G. Young, as sole testamentary trustee under the will of Thomas Cornell, deceased. From a portion of the decree entered on the settlement of the accounts (41 N. Y. Supp. 539), the contestants appeal. Modified.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Cardoza Bros., for appellants, certain beneficiaries.

A. T. Clearwater and special guardian, for respondent Coykendall.

H. C. Soop, for respondent Young.

PARKER, P. J. I am of the opinion that the decree of the surrogate, in this matter, is correct, except in so far as it allows as a credit to the trustee the item of $200 per month, as extra compensation for his services. Under the provisions of the will it was his duty to account for and pay over all the "net income realized from the estate." It was to ascertain how much of such income he had in his hands that the accounting was ordered. By "net income" is meant the income derived from the whole property, less the necessary expenses in its management and disbursements incurred on account thereof; that is, less such expenses and disbursements as the trustee might lawfully incur in its management. A payment to himself of $2,400 per year, in addition to his lawful fees, was not a lawful disbursement, unless he showed that he had rendered extra services which were fairly worth that amount. There is no evidence that he rendered any extra services whatever; nor does he base his claim to be credited that amount upon any such theory. He claims it entirely by virtue of an agreement made with all parties interested, under date of May 20, 1893, to the effect that he should "receive and retain the further sum of $2,400 annually from the estate of Thomas Cornell," etc. There is nothing in this agreement indicating that he

was to perform any extra work in consideration of this increased pay. On the contrary, he is to receive it "as compensation for his services as executor and trustee." Such agreement did not make the expenditure of $2,400 a disbursement necessarily incurred in the management of the estate,—one which it can be supposed the testator had in his mind when he created the trust. Hence it cannot be used to diminish the net income of the estate. The net income was the balance struck between all receipts and the necessary and lawful expenditures made, exclusive of this credit to himself as extra compensation.

Now, whether the agreement signed by Mrs. Cornell is or is not a valid one, that can be enforced against her, I do not think the surrogate, in settling these accounts, had any right to consider it. The thing which the surrogate was to ascertain, and which his decree was to distribute, was the net balance of income in the trustee's hands. If the trustee had any agreement with the distributees, or either of them, that excused him from paying over to either the whole or any part of his or her distributive share of such balance, such agreement would be available to him when called upon to pay; but the existence or validity of such an agreement was not a matter which could be litigated or settled in the surrogate's court. In re Underhill, 117 N. Y. 471, 22 N. E. 1120; Stilwell v. Carpenter, 59 N. Y. 414.

The effect of the agreement between the beneficiaries and the trustee, that he might "retain from the estate" a certain sum per year as an additional compensation for his services, was nothing more than a contract to pay him such amount, and possibly to give to him a lien for such amount upon their distributive shares. It did not operate to lessen the amount of the "net income" for which he should account, nor to lessen the distributive share which the surrogate should adjudge to each. It is a serious question whether such an agreement is not prohibited by the provisions of 1 Rev. St. p. 730, § 63; and the determination of that question by the surrogate was not at all necessary to enable him to properly determine the amount of "net income" then in the executor's hands for distribution. It was not within the scope of his jurisdiction upon that accounting to decree an enforcement of such contract as between the beneficiaries and the trustee.

For this reason, I conclude that the decree of the surrogate should be modified by striking out therefrom the item of $200 per month, allowed him pursuant to such agreement, and, as so modified, affirmed, with costs of both parties payable out of the fund.

LANDON and HERRICK, JJ., concur.

PUTNAM, J. (dissenting). I think the surrogate reached a correct conclusion on the questions involved in this case. See In re Young, 17 Misc. Rep. 680, 41 N. Y. Supp. 539. The testator directed his executors and trustees "to preserve and keep said estate together intact." He authorized them to hire and employ servants and agents to aid them in the management of the estate, and provided that out of the net income 90 per cent. should be paid his widow, and 10 per

cent. should be added to the estate. After the settlement of the estate, and after the trust property had come into the hands of the trustees (which they were thus directed to keep and preserve together intact), the direction as to the net proceeds, I think, must be deemed to refer to the income of the estate after paying the necessary expenses and disbursements in the management thereof, including taxes accrued after the death of the testator. The property was to be kept together intact, and the net income was to be derived from that property as so kept together. It was the income received from the whole property, less the necessary expenses in its management and disbursements incurred on account thereof. See In re Jones, 37 Hun, 430; Id., 103 N. Y. 621, 9 N. E. 493; In re Albertson, 113 N. Y. 434–437, 21 N. E. 117.

I do not think that the claim that the agreement to pay the trustee an annual compensation of $2,400 is invalid, as amounting to an assignment of the income of the trust, is sound. If the trustee, instead of entering into the agreement in question, had employed a third person to do the same work he agreed to do for $2,400, clearly such an employment would have been authorized by the terms of the will, and the amount paid for such services would have been chargeable against the income, under the authorities above cited. The agreement by which $2,400 was to be paid the trustee for services was in no proper sense an assignment of the income of the trust. It was merely a contract relating to the necessary expenses of collecting the income. It provided that, instead of employing some third person in work necessary to be done to realize such income, the trustee might perform the work, and receive the compensation therefor. An agreement in reference to services necessary to be performed in the management of the trust estate from which the net income was to be derived was not an assignment of the income. The net income was the annual sum payable after the said services had been settled for. It was not claimed before the surrogate that the trustee had not performed necessary extra services to the value of $200 a month, but the claim was that the item should be charged in whole or in part to the principal of the estate. The necessity and value should therefore be here assumed, as definite proof on the subject might have been given had the contrary been claimed. The only question, then, for us to decide, is whether the surrogate was correct in charging the whole to the income, as a disbursement in the management of the estate.

I think the decree should be affirmed, with costs.

MERWIN, J., concurs.