SPENCER et al. v. SPENCER et al.  (No. 7193.)

(Supreme Court, Appellate Division, First Department. July 9, 1915.)

TRUSTS ☞274—EXPENSES—RESIDUARY ESTATE—TAXES.

Where testator left his residuary estate in trust to pay the "net annual income" to his widow for life, taxes on his one-third interest in unproductive farm land which became part of the residuary estate were payable out of the income, where there was no contrary direction or intention in the will that it should be paid out of the principal of the estate.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 389–392, 493; Dec. Dig. ☞274.]

Ingraham, P. J., and Laughlin, J., dissenting.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from Special Term, New York County.

Proceeding by Lorillard Spencer, 3d, and others, as trustees, etc., against Caroline S. Spencer, impleaded with Lorillard Spencer, 4th, and others. Judgment entered on a decision after a trial settling the accounts of plaintiffs as trustees, and defendant Caroline S. Spencer appeals. Judgment and order affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Herbert Barry and J. Mayhew Wainwright, both of New York City, for appellant.

Wolcott G. Lane, of New York City, for respondent trustees.

Charles H. Edwards, of New York City, for respondent Sands.

DOWLING, J. By the sixth clause of his will, Lorillard Spencer, 2d, provided among other things as follows:

"Sixth.—All the rest, residue and remainder of my estate of every nature and kind, whether real, personal or mixed, and wheresoever situated, which I have or may have or of which I may die possessed, and whether in possession, reversion or remainder, so far as I have power to dispose of the same by will, I give, devise and bequeath to my said Trustees hereinafter named, their survivors or survivor, successors or successor, in trust, however, for the following purposes: To invest and reinvest the funds of said trust estate and change the investments thereof according to their or his best skill and judgment in the way and manner hereinafter provided; to collect and receive the rents, dividends, interest and income thereof and to pay over to my said wife, Caroline S. Spencer, during her life, the net annual income in quarterly installments."

Among other property deceased left a one-third interest in a tract of land situated at Williamsbridge, borough of the Bronx, city of New York, which had come to him through inheritance, and which had been in his family for many years. As to this one-third interest he directed by the third clause of his will that if the farm was not sold by the executors of his brother Charles before July 28, 1911, the proceeds of the testator's interest in said farm should be divided as follows: If he sold his entire interest in the farm previous to his death, he bequeathed to his son, Lorillard Spencer, Jr., the sum of $100,000; or, if he only sold a portion thereof before his death, then a sum equal to 25 per cent. of the net proceeds of the sale. If, after the testator's death, the whole of his interest in the farm, or any part thereof, was sold by his executors, then he gave and bequeathed to his son, Lorillard Spencer, Jr., a sum equal to 25 per cent. of the net amount realized on the sale. If the son should die before him, or if, at the time of his death, the whole or any part of the farm should remain unsold, then he gave to his daughter-in-law, Mary R. Spencer, the same share in the proceeds of said property which his son would have received if living. No disposition was made of the remainder of his one-third interest in the said farm, or the proceeds of sale thereof, or any interest therein, over and above the amount so bequeathed to his son. The personal property turned over to the trustees amounted to $156,-802.50, in securities and cash, subsequently increased. The testator held other real estate as well as the Williamsbridge farm.

The complaint set forth that all of the real estate owned by the testator was held by the trustees as part of the residuary estate, and that allegation was admitted by the answer of the appellant, although she subsequently sought leave to amend the same. The Williamsbridge farm is unproductive, and the taxes thereon have been paid by the trustees out of the income of the residuary estate. The appellant claims that the taxes and carrying charges should not be paid out of the income of the estate, but that she should receive her share thereof without deduction. It is a settled rule that annual taxes and carrying charges must be borne by the person having a life interest in the property, unless there is an unmistakable direction to the contrary in the instrument creating the various estates therein. Pinkney v. Pinkney, 1 Bradf. Sur. 269; Booth v. Ammerman, 4 Bradf. Sur. 129; Matter of Albertson, 113 N. Y. 434, 21 N. E. 117; Woodward v. James, 115 N. Y. 346, 22 N. E. 150; Chamberlain v. Gleason, 163 N. Y. 214, 57 N. E. 487; Matter of Tracy, 179 N. Y. 501, 72 N. E. 519. It is to be noted that the income which is to be paid over to the testator's widow is "the net annual income." There is nothing in this will from which can be spelled out any intention upon the part of the testator that the carrying charges upon this property should be paid out of the principal of his estate, or that it should not be deducted from the income. To insert such a provision in the testator's will would, it seems to me, be making a will for him, and would not be construing the will which is actually made.

I therefore think the judgment appealed from should be affirmed, with costs. Order filed.

McLAUGHLIN and HOTCHKISS, JJ., concur.

INGRAHAM, P. J. (dissenting). The question presented on this appeal is when certain amounts paid by the trustees for taxes on an interest of the testator in certain unproductive real property should be paid from the income of the trust property. The testator had upwards of $250,000 of personalty, several parcels of productive real estate located in the city of New York, a residence at Newport, R. I., and an undivided third interest in a tract of land at Williamsbridge. He had an income of from $35,000 to $45,000 a year, of which his property produced about $20,000 per year, and $20,000 per year was the income of certain property held in trust, to the income of which he was entitled for life, with remainder to his son. On April 27, 1911, he executed his will, and he died March 14, 1912, leaving him surviving his widow, the appellant, and one son, who was one of the trustees, his only heirs at law and next of kin. He had resided at Newport, R. I., for many years. By his will he left $100,000 and all his household furniture, pictures, jewelry, and other articles of personal property to his wife, except certain articles which he specifically bequeathed to his son, and, with the exception of some legacies to servants and the sum of $25,000 in trust for his grandson and an annuity of $200 a year, he gave, devised, and bequeathed all the rest, residue, and remainder of his estate, "of every nature and kind, whether real, personal or mixed, and wheresoever situated," to trustees to pay to his wife during her

life "the net annual income in quarterly installments," and upon the death of his wife to pay such income to his son for life, with a remainder to the lawful issue of his son. He gave to his trustees a full power of sale or exchange of his real estate, and provided for the investment of the trust fund, "charging any and all premiums paid upon said bonds and securities to the capital of the trust, expressly directing that my said trustees, the survivor and survivors, successor and successors, shall apply the entire amount received for interest on such bonds as income to the benefit of the life beneficiary, and shall not retain any amount as a sinking fund towards reimbursement to the principal of the premiums paid on the purchase of said bonds." The will further provided that the trustees may account to the satisfaction of the trustees and of the cestuis que trustent, but not remaindermen; that the provision for his wife should be in lieu and bar of dower, or in satisfaction of all claim to a distributive share of his estate.

A consideration of the careful provisions of this will must satisfy any one reading it that the first thought of the testator was to insure to his wife an income for her life. The interest on all the bonds was to be paid to her, and no amount was to be retained for a sinking fund, and all the net income of the residue of his estate was to be paid to his wife, and after her death to his son. When the will was executed the testator owned an undivided third interest in the Williamsbridge farm. He treated this as distinct from his other property, evidently understanding that it would be disposed of before his death. The will recited that he had an agreement with his brother and sister to divide the farm if it was not sold before July 28, 1911, and then directed that "the proceeds of my said interest in or share of said farm shall be divided as follows": If he sold his entire interest in said farm before his death, then his son was to have $100,000. If he sold part of it, his son was to have 25 per cent. of the net proceeds of such sale. If after his death the interest in the farm was sold by his trustees, then his son was to have 25 per cent. of the amount realized from such sale or sales, with no provision as to what should be done with the remaining 75 per cent. The agreement with his brother and sister to divide the farm was not carried out during his life, nor was any of it sold either before or after the death of the testator, and it is evident that since his death conditions have existed that have made it impossible to sell at anything like its value; but it produces no income, and the taxes that have been imposed and the cost of carrying it have absorbed all the income of the estate, so that the wife has received but $3,060.62 during a period of more than two years from the testator's death.

It would seem that the net income from the estate during this period has been about $23,278.63. From this has been expended on the Newport property, which has been occupied by the widow, $8,824.45, and for carrying charges and taxes on the Williamsbridge property $9,-877.79. The trustees paid this sum for taxes out of the income received from the balance of the trust. The widow claims that these taxes and charges should not be paid out of such income, and the court has sustained the contention of the trustees. Did the testator intend that the charges for carrying the Williamsbridge property until it could be sold, as he evidently intended that it should, should be paid out of the

income which he had provided for the support of his wife, so that she should be left without income for her support? I do not think he did. It is undoubtedly the rule that "interest on mortgages, taxes, repairs, and all those current expenses which are fairly incidental to the maintenance of the realty used by a life tenant, are payable by him"; and that rule should be "adhered to upon all occasions unless in so doing we violate a plain direction to the contrary, which, if not found in the will in so many words, yet is the only one which a fair and reasonable construction permits of our finding." Matter of Albertson, 113 N. Y. 434, 21 N. E. 117. But where the testator manifests the contrary intention, it must govern. Matter of Tracy, 179 N. Y. 501, 72 N. E. 519; Clarke v. Clarke, 145 N. Y. 476, 40 N. E. 220.

This property, however, does come within this rule, for it was evidently not the intention of the testator that it was to go to the trustees as part of the trust. Its disposition was specifically provided for by the third clause of the will. If all sold before his death, $100,000, or one-fourth of the net proceeds of the part sold, if only a part was sold, was to be paid to his son. As to that portion of the proceeds which was to be paid to his son, it was not and never would be a part of the trust estate. The testator evidently understood that this Williamsbridge property would not produce any income; that if he did not sell it during his life, his trustees would; and that the proceeds would be disposed of as he directed—that is, one-quarter to his son, and the remaining three-quarters to become part of the residuary estate. It was clearly not anticipated that the period before the sale of the property would be so long that the question as to how the taxes should be provided for would be serious, and so the property was left in a class by itself, the taxes and carrying charges to be paid from the proceeds of the sale when made. Considering the careful provisions in the will by which the whole income of his property should be assured to the testator's widow, and to his son after her death, without deduction for the so-called "sinking fund," or to make up any deficiency, and the separate disposition that he makes of the proceeds of this Williamsbridge property when sold, they seem to me to carry the conviction that it was not the intention that this farm until sold should be a part of the trust property, so that the cost of carrying it should be paid out of income of the property which was to be devoted to the support and maintenance of his wife; and I think it will best carry out the expressed intention of the testator by providing that these taxes shall be paid out of the principal of the estate.

The judgment should therefore be modified, as hereinbefore indicated, with costs to all parties payable out of the estate.

LAUGHLIN, J., concurs.