WILLIAM PONSONBY FURNISS and Others, Appellants, Respondents, *v.* WARREN CRUIKSHANK, as Substituted Trustee, etc., of WILLIAM P. FURNISS, Deceased, and Others, Respondents.

LUCIUS H. BEERS and Others, as Executors, etc., of MARGARET E. ZIMMERMAN, Deceased, Appellants, Respondents.

First Department, April 9, 1920.

**Trusts — testamentary trustee must amortize difference between cost of bonds bought at premium and redeemable value — when taxes and penalties for failure to pay taxes on unproductive part of trust property chargeable to income from entire estate — loss on loan chargeable to principal in absence of negligence — increase in value of unproductive real estate becomes part of corpus of estate.**

In the absence of a clear direction in the will to the contrary, where investments are made by a testamentary trustee, the principal must be maintained intact from loss by the payment of premiums on securities having only a definite term to run, and in such case the trustee must make such deductions from the interest received as will suffice to make the principal whole when the securities mature.

The will of the testator contained no expression suggesting an intention that the principal of the trust estate should not be maintained intact, and, therefore, the amount of the premiums paid on bonds should be charged against the income.

Where a testator deliberately creates a trust estate merging productive with unproductive property and the will provides that the beneficiaries shall receive only the net income of the entire trust for their benefit, and the trustees possess a discretionary power of sale only, annual taxes on the unproductive part are properly chargeable against the gross income.

Where a testator directed that the residue of his estate should be divided into equal shares and that said shares should be held in trust for the benefit of his several children, the fact that a part of the real property was sold in partition proceedings and the proceeds thereof divided among the several shares and the unproductive part of said real estate was divided in kind, and that thereafter the trustees sold the unproductive real estate set apart for some of the beneficiaries at their request and added the money received to their respective shares, did not affect the trust created for the others in said unproductive real estate or the intention of the testator that the carrying charges thereon should be paid out of gross income, and, therefore, the annual taxes paid on the unproductive property assigned to one of the beneficiaries were properly deducted from the gross income received from the share of said beneficiary.

Penalties which accrued by reason of the neglect of the trustees to pay the taxes on the unproductive property, not resulting from litigation with reference to such taxes, were properly charged against the income where it appears that the practice was for the beneficiary to receive the entire income and then to return to the trustees sufficient money to pay the taxes as they fell due.

The trustees loaned money on real estate security and thereafter on foreclosure sale bid in the property and after holding it for several years sold the same with a loss. On all the evidence, *held*, that the conduct of the trustees in making the loan and in holding the property after the foreclosure sale was not so negligent as to require that their account should be surcharged by crediting to principal the loss sustained.

Where unproductive real estate which is left in trust with a discretionary power of sale only in the trustees is held by them till it appreciates greatly in value and then sold, the entire amount received for such property becomes a part of the corpus of the estate and the life tenants are not entitled to share therein.

LAUGHLIN, J., dissents in part, with memorandum.

APPEAL by the plaintiffs, William Ponsonby Furniss and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 30th day of April, 1915, upon the report of a referee.

Appeal by the defendants, Lucius H. Beers and others, as executors, etc., from so much of a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 30th day of April, 1915, as adjudges that the proceeds of the sale of real estate forming part of the principal of the trust as set forth in Schedule " B " of the account herein, were properly credited by the accounting parties in their entirety to capital and overrules the objections of said defendants to certain items of said schedule, and from so much of said judgment as awards certain allowances in addition to costs.

*Brainard Tolles* of counsel [*Davies, Auerbach & Cornell,* attorneys], for the plaintiffs.

*Franklin B. Lord,* for the defendants, appellants and respondents.

*Julian C. Harrison* of counsel [*William E. Reinhardt* with him on the brief; *Paine & Harrison,* attorneys], for the respondent Randolph Perkins, as substituted trustee, etc.

MERRELL, J.:

This action is brought to compel an accounting for the acts of a deceased testamentary trustee. A referee was appointed in the action to take and state the account of said trustee and to hear and determine all questions arising thereon. The referee heard the proofs and made and filed his decision and report. A judgment was entered in part upon the report of said referee and in part pursuant to the direction of the court. Cross-appeals have been taken from the judgment thus rendered, the plaintiffs appealing from each and every part thereof, while the defendant Margaret E. Zimmerman appealed from so much of said judgment as adjudged that the proceeds of sale of certain real estate which formed a part of the principal of a trust created by said will had been properly credited by the accounting parties entirely to capital. Said last-mentioned appellant also appeals from certain extra allowances in addition to costs awarded by said judgment. In all other respects said appellant asks that said judgment be affirmed. The plaintiffs ask that so much of the judgment as was appealed from by said defendant Margaret E. Zimmerman be affirmed.

The questions involved upon this appeal arise from certain trust provisions made in the last will and testament of William P. Furniss, who died a resident of New York county in 1871. Said decedent left a last will and testament which was duly admitted to probate in the Surrogate's Court of New York county. The testator left a widow and six children, three sons and three daughters. The widow and all of said children are now deceased, the last one to die being the defendant and appellant Margaret E. Zimmerman, who died after bringing said appeal. The will of said testator first makes provision for his wife, Sophia Furniss, giving to her the house in which he lived and other real estate and certain personal property absolutely. Certain small bequests are then made by the will, and, after providing for the payment thereof, the testator directs his executor to divide the residue of his estate into as many equal shares as would allow one share to his wife, should she survive him, and one share to each of his children, the shares to the children, however, being subject to deduction to the extent of any advancements which the testator had made to said child as shown by his check book or other books of account. One

of said equal shares of the residue of testator's estate he gave by his will to his wife absolutely. The other six of the seven shares went to his three sons and three daughters. To each of his three sons he willed a share of said residue in trust, the said share to be held by the executors named in his will, to invest the same and to collect and receive the income therefrom and to pay over said net income of both real and personal estate as received to said son during his life and upon his death the principal sum to such of the five surviving brothers and sisters as he might appoint by an instrument executed as a will of real estate. In case of failure of the son to make such appointment, then the testator gave the share of said residuary estate thus held in trust for the benefit of said son in equal shares to his surviving brothers and sisters. Like trust provisions were made as to each of the three sons, and as to each it was provided that if any judgment, decree or order for the payment of money should be made against such son then so long as such order, decree or judgment remained in force, the said son's interest in the income of said share should cease, and only so much of said income should be applied for his support as in the discretion of said trustees was necessary therefor, the surplus during such period of withholding said income to go to the testator's daughters then living, in equal shares.

As to each of his daughters the testator left to the executors named in his will, exclusive of the executor who was the beneficiary of the trust, a one-seventh of his residuary estate. The executors were to collect the rents and income from the real estate of the testator and to keep invested and collect the income of the personal estate, and to pay over the net income of both the realty and personalty to said daughter during her life, and upon her death the testator gave the same to such of her issue, if any, brothers and sisters, as she might appoint by instrument executed as a will of real estate. Failing such appointment, the testator gave the remainder of said share to the mother, if she should survive the daughter, and if the mother should not survive, then the same should go to the daughter's surviving sisters, in equal shares.

William P. Furniss left him surviving his widow, Sophia Furniss, three sons, William, Leon and Hartman K., and three

daughters, Sophia, Margaret and Clementina. Testator's widow died many years ago. The three sons all died prior to the commencement of this action. At the time of the commencement of the action the three daughters, Sophia R. C. Furniss, Margaret E. Zimmerman (formerly Margaret E. Furniss) and Clementina Furniss were all living. Under the terms of the testator's will his daughters Sophia and Margaret, together with one Jacob D. Vermilye, were named as executors of said will and trustees of the trusts therein provided. Under the terms of the will as to the trust estate created for the benefit of the daughter Margaret, the daughter Sophia R. C. Furniss and the said Jacob D. Vermilye became trustees. The trustee Jacob D. Vermilye died in 1892. Thereafter until her death his cotrustee, Sophia R. C. Furniss, continued to act as surviving trustee of said trust.

This action was commenced in March, 1911, and sought to compel an accounting by said Sophia R. C. Furniss, as sole surviving trustee of the trust contained in said will for the benefit of testator's said daughter Margaret E. Zimmerman. Subsequently to the commencement of the action Sophia R. C. Furniss died leaving a last will and testament whereby all of her property was left to her two sisters, Margaret E. Zimmerman and Clementina Furniss. Testator's daughter Clementina Furniss died since the entry of final judgment herein. By her will she left all of her property to her sister Margaret E. Zimmerman. The last surviving child of the testator, Margaret E. Zimmerman, died during the pendency of this appeal, leaving all of her property to strangers to the blood of William P. Furniss, deceased. Therefore, at the present time, those beneficially interested in the estate of Sophia R. C. Furniss, for whose acts an accounting is made, are the same persons as those interested in the estate of the life tenant, Margaret E. Zimmerman. Upon the death of Margaret E. Zimmerman, she then being powerless to exercise the power of appointment contained in testator's will, the persons to whom she might have devised or bequeathed said trust estate all being dead, the principal of the trust fund reverted to the heirs and next of kin of the testator. Since the death of Sophia R. C. Furniss, the sole surviving trustee of the trust created for the benefit of Margaret E. Furniss, one Warren Cruikshank,

has been substituted as trustee under said last will and testament and as such has been duly made a party defendant herein. Administrators have been appointed with the will annexed of Sophia R. C. Furniss, deceased, and the will of said Margaret E. Zimmerman has been admitted to probate, her executors have qualified as such, and said administrators of Sophia R. C. Furniss, deceased, and said executors of the will of Margaret E. Zimmerman, deceased, have been made parties defendant herein.

The estate of the testator consisted almost entirely of real property. Upon the death of the daughter Margaret E. Zimmerman the reversionary interest in the principal of the trust fund became vested as follows: Three-sixths thereof in the estate of said deceased daughter, Margaret, as the legal representative of herself and her two sisters, Sophia and Clementina; one-sixth of said estate went to the plaintiffs as the only heirs at law and next of kin of William P. Furniss, deceased; one-sixth to the trustees of Leon Furniss, testator's deceased son, and one-sixth to the widow and successor in interest of testator's son Hartman K. Furniss, deceased. Testator's personal estate was small, amounting to only $41,899.83, and was no more than sufficient to discharge his personal debts. Testator left a large amount of valuable real estate in and about the city of New York, consisting of business property in the lower part of the city and residential property throughout the city. He was also the owner of a tract of land, consisting of about 200 lots at the time known as Bloomingdale, situate along the present Riverside Drive. These lots were unimproved and unproductive, except as they were rented to truck gardeners, and produced a small income, insufficient to pay the taxes assessed thereon. Not long prior to testator's death the city of New York instituted condemnation proceedings for the purpose of acquiring a portion of these vacant lots along the Riverside Drive for park purposes. After testator's death an award was made therein and the executors of his will received for the property condemned by the city for such purpose $524,258. From this amount was set apart the share of said real property given to the widow absolutely under the first clause of testator's will. There remained to become a part of the six trusts created by testa-

First Department, April, 1920. [Vol. 191.

tor's will for the benefit of his children the net sum of $306,506.69. This sum was invested by the trustees under the will and the income derived therefrom was sufficient to discharge the carrying charges and taxes upon the remainder of the Bloomingdale lots, the balance being paid to the beneficiaries under said trusts.

In 1874 an action was brought to partition testator's real property. A part thereof was sold and the proceeds divided among the several trusts. The so-called Bloomingdale lots on the upper west side of the city and some of testator's residential property were partitioned in kind, the said property being divided among the six trust estates. A difference then arose between the sons and the daughters of testator, the sons insisting that the trustees of their shares should sell the Bloomingdale lots belonging to their respective trusts. The trustees acceded to the wishes of the sons, and the real estate set apart to the three trust estates in behalf of said sons was converted into money by the trustees of said funds. Testator's daughters adopted the opposite policy and held the real property covered by the three trusts for their benefit together in anticipation of an increase in value. As a consequence thereof the property which was retained as a part of their several trusts increased greatly in value. The parcels of the real property set apart to and belonging to the trust for the benefit of the daughter Margaret E. Furniss were held by the trustee for her benefit for many years. All of said real property was, however, sold before the commencement of this action. In the disposition thereof five different sales were made, and there was received by the trustees for the benefit of Margaret E. Zimmerman for said Bloomingdale lots in all the sum of $439,337.85. The first of said sales of the real property included in the trust in question was made in 1885, and the last parcel was sold in 1902. During all the years when this real property was held it was practically unproductive, returning to the beneficiary under said trust practically no income. It is urged by her executors in her behalf upon this appeal that a portion of the amount received from the sale of these lots should be credited to income and paid to the executors of the estate of said Margaret E. Zimmerman, deceased, as income upon said trust fund. In short, it was claimed by the life

tenant upon the reference, specifically, that the amount received from the deferred sales of this unproductive real estate should be divided between capital and income in such manner that a sum which would have been sufficient if invested at four per centum interest in December, 1874, when said property was partitioned, to produce the sum in the hands of the trustees at the time of such sale, after deducting expenses, should be credited to capital, and the remainder to income. The referee decided that the entire avails from the sale of said real property should be credited to capital, and no part thereof credited to income, and that part of the judgment entered in accordance with the decision of the referee in this respect forms the basis of the appeal now being prosecuted by the executors of Margaret E. Zimmerman, deceased.

The plaintiffs, appellants, herein seek a reversal of the judgment entered upon alleged errors of the referee in four respects:

1. The plaintiffs, appellants, claim error by the referee in absolving the trustees from the duty of setting apart a fund for the purpose of restoring to the principal of the estate amounts paid as premiums upon bonds purchased by them prior to the year 1907 as a part of the investment of trust funds in their hands.

2. That the referee erred in holding that the ordinary annual taxes on the Bloomingdale lots were chargeable to principal and not to income.

3. That the referee erred in holding that penalties by way of interest upon taxes and assessments upon the Bloomingdale lots incurred by the trustees on account of delay in payment of said taxes and assessments were chargeable against principal and not against income.

4. That the referee erred in holding that the estate of the deceased trustee was not chargeable with loss resulting from failure to sell promptly certain real property in the city of Brooklyn received by the trustees in foreclosure proceedings.

The account of the deceased trustee was surcharged by the judgment appealed from with certain unauthorized investments amounting to $408,717.46. This surcharge was for investments of the trust fund in securities unauthorized by the statutes of the State. The judgment allowed the accounting parties until the expiration of one year after the conclusion of peace in Europe in which to make good the amount with which they

were thus charged. It is, however, admitted that this last consideration is without significance at this time, as the unauthorized investments have been replaced either in cash or legal securities.

As to the claim that the referee erred in holding that the trustees were not bound to replace in the principal of the estate premiums paid by them in the purchase of bonds for the investment of trust funds, it may be said that in the progress of administering the trust estate the trustees made several purchases of municipal and railroad bonds as investments of trust funds. These bonds were bought at a premium. They all matured at a definite time and, of course, upon maturity were redeemable at only their par value. Therefore, to the extent of premiums paid in the purchase of said bonds there was an encroachment upon the corpus of the trust estate, and it is the claim of the plaintiffs, appellants, that such encroachment was unauthorized and that to the extent of the premiums there should have been an amortization of the income derived from said bonds in sufficient amount to make good such encroachment upon the corpus of the trust estate. The learned referee held, in substance, that until the year 1907 the law had been unsettled as to the duty of a trustee to amortize the difference between the cost of bond investments running for a definite time and purchased at a premium and the amount at which said bonds would be ultimately redeemed. In that year, 1907, the Court of Appeals, by a decision in *Matter of Stevens* (187 N. Y. 471), finally established the rule that in the absence of a clear direction in the will to the contrary trustees must amortize from the income of said bonds a fund sufficient to make good the encroachment upon the trust fund as the result of premiums paid for bonds. The learned referee held that by the decision in *Matter of Stevens* in 1907 it became the duty of trustees to provide a sinking fund out of interest paid to them on the bonds, sufficient to make good upon their maturity the premium paid therefor, to the end that the principal of the trust fund might be preserved intact. The purchase of bonds at premium by the trustees in the case at bar was prior to this decision in *Matter of Stevens* when, as the referee concludes, the law was in a state of uncertainty. An examination of the authorities leads me to differ with the

learned referee in such conclusion. The law seems to have been reasonably well settled long prior to the decision in *Matter of Stevens* that a proper discharge of a trustee's duties involved the preservation intact of the corpus of a trust estate by providing from the income derived from bonds purchased at a premium sufficient to make good the premium paid. This court held as early as 1897 in *New York Life Ins. & Trust Co.* v. *Kane* (17 App. Div. 542) and *Matter of Hoyt* (27 id. 285), decided in 1898, and in the late case of *New York Life Ins. Co.* v. *Baker* (38 id. 417; affd., 165 N. Y. 484), that where a trustee invests in bonds, paying a premium therefor, he must make such deductions from the interest as will suffice to make the principal whole when the bonds mature. The case of *Matter of Stevens*, upon which the referee relies as authority for the statement of the doubtful proposition, does not materially differ from the earlier decisions. The court in the *Stevens* case reiterated the settled doctrine as to the duty of trustees as to amortization to cover premiums paid, but suggests that the terms of the will may be such as to take the case from the general rule, but that to justify such exception to the rule the intent of the testator should be expressed in the very clearest manner. The court said in *Matter of Stevens* (187 N. Y. 471, 477): " We, therefore, adhere to the rule declared in the *Baker* case, that in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, then the rule in the *McLouth* case prevails, and the whole interest should be treated as income. These rules may not work perfect justice in all cases, and we fully appreciate that there may be inconsistencies between them, but it is far better that they should be uniformly adhered to, even at the expense of a particular case, than that the administration of estates should be subjected to constant litigation and disputes. It is also to be said that unless the rule in the *Baker* case is to be observed, the relative rights of life tenant and remainderman would largely depend on the favor or caprice of the trustee who might either buy a bond bearing a high rate of interest at a great premium and impair

the principal, or buy a bond bearing a lower rate of interest substantially at par, and preserve the principal intact."

So far as I have been able to discover, there is no expression to be found in the will of William P. Furniss suggesting an intention on testator's part that the principal of the several trust funds should not be maintained intact. On the contrary, the will, as a whole, evinces a clear intent on the part of the testator that the trust funds provided by his will should remain intact and inviolate. I am of the opinion that the account should be restated and to the extent of the encroachments made upon the corpus of the trust fund the income of the trust estate should be charged with the premiums thus paid, and to that extent the amount credited to principal in the account should be increased.

The referee held, I think, erroneously, that the ordinary annual taxes on the so-called Bloomingdale lots were properly chargeable to principal and not to income. The testator left his widow certain specific real and personal property. He then directed a division of his residuary estate into seven parts. As before stated, one of said parts went to the widow absolutely, and one part was left in trust for each of testator's six surviving children. At his death, testator's personal estate amounted to $41,899.83. Shortly after his death, through the award made in condemnation proceedings taken by the city, there was paid to the executors as a part of the residuary estate the net amount of $306,506.69. The award which the city paid was $524,258. Of this, $72,851 was set apart to the widow as given to her directly under the will. A deduction for assessments to adjacent real property of the testator for benefits accruing by reason of the creation of the Riverside Park, amounting to $144,900.31, was also deducted from the award, leaving the net balance above mentioned. In addition thereto the testator left a large amount of real property in the city of New York. This consisted of business property on Wall street, on Bond street, and residential property at other points in the city of New York, all of which was highly productive. He also left 200 lots known as the Bloomingdale property in the vicinity of the present Riverside Park, and some other property of little value. The executors and trustees, in the performance of their duties, took possession

of all of the testator's property, real and personal, and managed the same. The income from testator's real property seems to have been entirely sufficient, even prior to the award for the Riverside Drive property, to meet the requirements of the widow and children of the testator for their support and maintenance, including taxes and carrying expenses of all real property belonging to the estate. By his will the testator directed his executors and trustees to collect the rents of all of his real estate and apply the same to the payment of any debts which he might owe and also the payment of taxes, insurance and repairs on said real estate with discretion in the executors to apply any sums received by them for insurance to repairs or rebuilding damaged premises. The provision of testator's will in this respect is as follows: "And I also authorize them until such partition has been effected to collect the rents of all my real estate and to apply the same to the payment of debts which I may owe, and also the payment of taxes, insurance and repairs on real estate, and in their discretion to apply any sums which they may receive for insurance to repairing or rebuilding the damaged premises."

It is evident therefrom that the testator intended that the ordinary annual taxes on the Bloomingdale lots should be paid out of the rents of any productive real estate of which he died seized and which was held by the trustees. Very soon after testator's death a substantial amount was received form the condemnation of the Bloomingdale lots and thereafter said lots became not only self-sustaining, but the returns from the investment of the moneys received from the award materially increased the income to the children. Following a partition of testator's real estate among the several trusts, the three daughters of the testator apparently treated the three-sixths set apart for their benefit as their own exclusive property, with apparently little or no concern as to the reversion thereof. At this time Sophia was trustee for Margaret, and Margaret was trustee for Sophia, and both of them were trustees for the third sister, Clementina. In administering the three trusts the sisters seem to have acted in concert and by mutual consent used the income from the proceeds of the condemnation proceedings to pay the ordinary annual taxes and carrying charges on the Bloomingdale lots still remaining

unsold and which were distributed among the three trust funds. These payments in their books of account were charged to income and not to principal. Prior to 1897 it was customary for the trustees to pay to each beneficiary the gross income and for the beneficiary to return sufficient thereof to meet the current charges and expenses. In 1877 Mrs. Zimmerman returned from gross income received by her the exact amount which was paid out for taxes. For the fifteen years prior to 1888 she returned from the gross income which she had received, $17,316.24. The taxes paid upon the Bloomingdale lots during those years amounted to $17,287.06. During those years the net income rightfully payable to the beneficiary after deducting all current charges, including amortization of premiums, varied from $5,932.66, in 1875, to $3,539.54, in 1884. There is no claim but what the net income thus received was adequate to support the beneficiary in comfort and in keeping with her previous station in life. No attempt was made until the preparation of the account herein to charge against principal the taxes in question. The appellants insist, and requested findings of fact to be made by the referee, that such taxes were properly charged against income and not against principal.

In the state of the testator's property at the time of the making of his will, which was very shortly prior to his death, the will evidences an intent on the testator's part to merge all of his property into these several trusts. The testator had invested his property, as he thought, wisely. Time demonstrated the wisdom of his investment in the Bloomingdale lots. The testator foresaw that said lots were bound to appreciate rapidly in value. The productive · and the unproductive property together made up the trust funds. While these lots were temporarily unproductive and subject to the payment of taxes and other carrying charges, other of his real property which went to make up the trust funds was highly productive, and it was his evident intent that the productive should carry the unproductive. There was only a discretionary power of sale contained in the will. There was no direction to the executors or trustees to sell. Under the several trusts the net income only is given to the beneficiaries. I think the fair intent of the testator from these provisions was that he intended

from the gross income derived from all the property and estate should be paid the taxes and carrying charges necessary to maintain the trust estate intact. While the partition of the trust fund among the several trusts and the subsequent insistence of the sons that their portions of the Bloomingdale lots be sold ·and the proceeds invested by the trustees of their respective trusts defeated the intent of the testator with respect to such part. thereof, the course pursued by the testator's three daughters but carried out his wishes, and the payment of the carrying charges of the unproductive part of each daughter's trust estate from the income of the whole trust estate of said daughter, she receiving only the net income therefrom, was clearly in accord with testator's intent. I am unable to see how the partition of the trust estate and the division of the Bloomingdale lots among the several trusts affects the trust created by the will for the benefit of the daughter Margaret here under consideration or why such course should defeat testator's intent so faithfully observed by the trustees as to this particular trust. It is true that testator's far-sighted plan that the Bloomingdale lots be held by the trustees for the joint benefit of the six trusts, and that all of his children should share in the increasing value of said lots that testator thought imminent, was frustrated by the act of one of the sons in bringing action to partition testator's entire residuary estate among the several trusts, and there is much force in the suggestion of the referee and upon which he bases his finding that said taxes should be charged against principal and not against income, that testator's intention was to provide for his daughters and their possible issue, and that he did not intend that they should be restricted for the benefit of their appointees or of the reversioners in case said daughters should die intestate. To the learned referee it seemed inequitable to deprive the life tenant of reimbursement for taxes paid by her while carrying the property for the benefit of remaindermen. But, as suggested by the referee, the testator's plan was frustrated by the partition, and the referee has construed the will not in consonance with testator's intent, which is always the cardinal principle of interpretation of a will, but in the light of events occurring since testator's death and of which he could, of course, have had no knowledge. Margaret E. Zimmerman, testator's

last surviving child, died without issue, and, therefore, under the terms of the will, intestacy resulted as to the portion of testator's estate left in trust for the daughter Margaret. The plaintiffs are testator's only heirs at law and next of kin, and as such are entitled to the remainder of said trust fund. There can be nothing inequitable in the contention of the heirs and next of kin that as to that part of testator's estate of which he died intestate the will should be construed in accordance with testator's intent when he made it. I know of no rule of testamentary construction, in cases of partial intestacy, favoring devises to heirs and next of kin. The intent of the testator should govern, and surely he could not have intended that in case of intestacy as to any part of his estate, entire strangers should be preferred to his heirs at law and next of kin.

The law is well settled that where a testator knowingly creates a consolidated trust fund merging productive with unproductive property, and the will provides that the beneficiary shall receive only the net income of the entire fund for his benefit, the beneficiary can only receive the surplus after the payment of current charges and expenses of every kind. (*Matter of Young,* 17 Misc. Rep. 680; affd., 15 App. Div. 285; affd., 160 N. Y. 705; *Patterson* v. *Vivian,* 137 App. Div. 596; *Spencer* v. *Spencer,* 219 N. Y. 459.)

In *Matter of Young* (*supra*) the will of one Thomas Cornell was involved. Cornell died seized of a large estate consisting of productive securities and unproductive real property. Such unproductive real estate included wild lands in Ulster and Greene counties and a tract of unproductive real estate in the city of Kingston. He gave to his executors said residue of his estate in trust to pay to his wife during a certain period " ninety (90%) per cent. of the net income of my said estate." A controversy arose between the widow and the remaindermen over an item of $929.70 paid by the trustees to the State Treasurer as taxes on the wild lands embraced in the estate. The surrogate held that all current charges of every description connected with every species of the property embraced in the trust, and which included the item for taxes on wild lands, should be paid from current revenues from the whole estate before the widow received anything. The Cornell will was in many respects like the will now before us. In discussing that

will and in an effort to ascertain and define the intent of the testator, the surrogate wrote as follows: " He had seen this property grow up and assume the proportions that it had at the time of his death. No one knew so well as he, whose untiring industry and frugality has amassed it, its earning capacity and the possibilities of its development. His will provides a comprehensive scheme for retaining this wealth in his own family. Almost every contingency which the ingenuity of man could foresee is fully provided for. * * * This testator knew that some portions of his estate yielded little or no income, while other portions yielded a large income. It was, however, for his estate as an entirety that he always provided. He was satisfied with his own investments. He gave no direction to sell any particular property, nor change any particular investment, but directed his trustee ' to preserve and keep my said estate together intact,' etc., giving him, however, the power to realize on investments when necessary for the estate or when the trustee deemed it advisable."

And with reference to the real property within the limits of the city of Kingston, the surrogate continues: " With acres of land in the heart of this city rapidly increasing in value, with the unappeasable desire to aggrandize and enlarge his estate, he makes no direction to his trustees to sell this real estate, except in their discretion."

The surrogate then concludes: " Every will, in conformity, of course, to the general rules for construction, must be determined by the intention of the testator. Measured by this standard, I must hold that by the phrase ' net income ' this testator meant such income as should be left after payment of all the ordinary, proper and necessary expenses of conducting and conserving his estate, including the repairs of buildings, taxes, and salaries and wages of all necessary employees of the estate."

The decision of the surrogate was affirmed by the Appellate Division, Third Department (15 App. Div. 285), and the judgment of affirmance of the Appellate Division was unanimously affirmed by the Court of Appeals, without opinion (160 N. Y. 705).

In the matter of the discretion given to the trustees the will now before us resembles that of Thomas Cornell. In

gaining an insight into the attitude and intent of the testator, it is well to carefully note the language of his will. The will of William P. Furniss provided as follows: " I authorize .and empower the trustees of every one of the trusts herein contained to sell any of the real .estate comprised in his trust, and in such case the said trustees are to hold the proceeds subject to the trusts and limitations and provisions as are expressed and in relation to the share to which the land sold belonged. I further authorize and empower the said trustees to mortgage any lands belonging to their respective trusts, if they shall deem it advisable. I also authorize said trustees to lease lands belonging to their respective trusts subject to such covenants and conditions as they shall think proper, but not for terms longer than twenty-one years from the execution of the demise. I also authorize my said executors to agree to a partition of lands which I may hold in common with other persons and also to partition my estate, real as well as personal, into shares amongst the parties who may be entitled thereto as above expressed. And I also authorize them until such partition has been effected to collect the rents of all my real estate and to apply the same to the payment of debts which I may owe, and also the payment of taxes, insurance and repairs on real estate, and in their discretion to apply any sums which they may receive for insurance to repairing or building the damaged premises. I further authorize my said executors to compromise in their discretion all claims due to my estate or any claims that may be made against it. I hereby authorize such of my executors as shall qualify and such of the trustees as shall undertake the execution of the several trusts herein contained to do and perform every act discretionary or otherwise that all said executors or all the trustees of each several trust could perform under the expressions of this will. I hereby declare that all the powers herein given are intended to be discretionary and to be exercised or not as the said executors or trustees shall think proper, hereby authorizing a majority of trustees of any share to exercise such discretion if there shall occur a difference of opinion between them."

As in the Cornell will, the Furniss will gives to each life beneficiary the *net income* upon the entire trust fund, and the intent of the testator that the net income only, of both

realty and personalty, should be paid to each beneficiary, runs through every trust provision of the will. For instance, as to the trust for the benefit of testator's daughter Margaret the will provides: " Another of said shares I give to my executors exclusive of my daughter Margaret E. Furniss in trust to collect the rents and income of the real estate and to keep invested and collect the income of personal estate and to pay over the net income of both realty and personalty to my said daughter Margaret during her life."

In *Patterson* v. *Vivian* (*supra*) the construction of the will of one Marshall O. Roberts was involved. The will in that case gave the residue of the testator's estate to the executors in trust for the benefit of the testator's children. Payments were to be made to said beneficiaries out of " net income." A tract of unimproved land on Columbus avenue in the city of New York was included in such residue and trust. At the time of testator's death it was worth $22,500. The will contained a discretionary power of sale in the executors and trustees, and the unimproved land in question was retained by them for many years. It was finally sold for $200,000. During the time they held this real property, the executors paid, from the general income of the trust estate, taxes on the unimproved tract amounting in the aggregate to $24,344.07. An effort was made to obtain reimbursement from the proceeds of sale for said taxes paid, and that only the balance should be credited to the principal of the estate. The views of this court with reference thereto were expressed in the dissenting opinion of MILLER, J., in which dissenting opinion, however, the writer of the prevailing opinion in that respect concurred. This court, therefore, said in *Patterson* v. *Vivian* (137 App. Div. 596, 605): " The Columbus avenue lots formed a part of the general estate of the testator, left to his executors in trust with the power of sale to be exercised in their discretion, and until sold remained a part of the capital of the estate. Appreciation in value is not income. The *cestuis que trustent* have not contributed the taxes, as is contended, because they were entitled only to what was left after the payment of such taxes. There is no question but that the discretion of the executors has been wisely exercised and, as a result, such *cestuis que trustent* will now receive

an income of $200,000. Cases arising upon investments made by trustees have no application. The appellants Van Wart and Roberts cite *Matter of Rogers* (22 App. Div. 428), and rely upon certain expressions in the opinion of CULLEN, J., wholly apart from their context. That case dealt with the distribution among stockholders of certain assets of a dissolved corporation and of the stock of a new corporation organized to take over the plant and the business of the old one. The nature of the transaction itself, rather than the will of the testator, determined whether the distribution was of capital or income."

In the case of *Spencer* v. *Spencer* (219 N. Y. 459) the will of Lorillard Spencer created what was termed by the court a composite trust fund and gave the net income of said trust fund to his wife. Testator's estate included two parcels of unproductive real estate. One parcel was located at Williamsbridge and was known as the Williamsbridge farm, in which the testator owned a one-third interest. The other parcel was situate on the Bronx and Pelham Parkway. Testator in that case clearly indicated by the 3d paragraph of his will that he expected to dispose of his interest in the Williamsbridge farm before he died, or that the same should be sold by his trustees soon after his death. The 3d clause of the will provided that in case said Williamsbridge farm was not sold until after testator's death, he gave to his son, Lorillard Spencer, Jr., " a sum or sums equal to twenty-five (25) per cent of the net amount or amounts realized from such sale or sales, to be paid to him as soon as practicable after the net proceeds of such sale or respective sales are collected." The residue of his estate testator included in what the court called a composite trust fund. The court held that the testator's interest in the Williamsbridge farm never became a part of said composite trust fund, but that the testator intended to include in said trust only the seventy-five per cent of the net proceeds, after paying his son twenty-five per cent after deducting taxes and carrying charges as well as the expenses of sale. It was also claimed by appellant's counsel that as to the unproductive real estate on the Bronx and Pelham Parkway, the same rule should prevail. To this, however, the court refused to accede, and such unproductive real estate became a part of the composite trust fund. The court

said: " The general rule undoubtedly is that taxes and carrying charges on real estate held by trustees for a life beneficiary are to be paid out of the income of the trust estate, and are not properly chargeable to capital account, unless the will of the testator contains unequivocable directions to the contrary."

The retention of the Bloomingdale lots by the trustees resulted in great appreciation in the value of said property. The first of the lots allotted to the trust estate of Margaret E. Zimmerman (formerly Margaret E. Furniss) was sold in 1885, and the last of the lots comprised in her trust fund was sold in 1902. The total amount realized by her trustees upon the sale of all of said lots was $439,377.85. There was deducted therefrom as commissions and legal expenses $82,576.96, leaving a net balance as the proceeds of the lots allotted to her of $356,760.89. During the period that these lots were held there was a small income derived therefrom from rentals for truck garden purposes, which by the account has been credited to capital.

I think, under the cases above cited and for the reasons stated, the referee improperly held that the payment of such taxes from income was inequitable.

The referee also held that certain penalties accruing by reason of delay in the payment of taxes and assessments upon the Bloomingdale lots were chargeable against principal and not against income. This interest upon taxes amounted to $2,556.70. The final judgment followed the conclusion of the referee with reference to such penalties, and provided that the same should be charged against principal and not against income. The learned referee justifies his action in reaching such conclusion upon the fact that the evidence showed that taxes and assessments were being constantly adjusted, and that efforts were being made from time to time in good faith on the part of the trustees to reduce such taxes; that delay was unavoidable owing to litigation to test the effort of the trustees to reduce such taxes and payments could not be safely made until the termination of such litigation. The referee holds that the trustees might be liable for interest if there was an unreasonable delay after the litigations were ended and had funds with which to pay the same, but the referee concludes that the amount of such interest is inconsider-

able and in view of the great profit accruing to the remainder-men, the referee finds that the same should be disregarded. I have been unable to discover why the taxes were not paid promptly and before penalties accrued. The delay in payment of taxes and assessments for which the penalties were paid appears to me to have resulted not from litigation with reference to such taxes and assessments. The reason for delay in payment of taxes does not clearly appear, but it does appear that the practice was for the beneficiary, having received all of the income of the trust estate, to return to the trustees sufficient to pay the assessments as they fell due. The life tenant, therefore, had the use of the money that should have been returned to the trustees to pay said assessments and said life tenant should be charged therewith. A proper discharge of their duties as trustees should have prompted the trustees to have paid and discharged the taxes on the property before the accrual of penalties thereon. I am able to discover no good excuse for the negligence of the trustees in failing to pay said taxes before penalties accrued.

As to the fourth ground of error alleged by the plaintiffs, appellants, it appears that a loan was made to one Felt by said trustees in March, 1875, in the sum of $19,624.83, said loan being secured by a seven per cent mortgage on property known as Gowanus canal property situate in the city of Brooklyn. After the mortgagor had defaulted in two payments of interest foreclosure proceedings were brought on April 1, 1878, resulting in the sale of the property, which was bid in by the trustees at foreclosure sale. The expenses, including arrears of taxes, amounted to $4,312.91. The trustees held this property from the time of sale, October, 1880, to January, 1889, when the property was sold by the trustees at private sale to one Nicholas Ryan for $17,000. The loss upon the bond which the mortgage secured amounted to $6,937.74. This was charged to capital by the executors, as set forth in the account filed. The referee held that at the time of the original loan in 1875 counsel for the trustees took every precaution to safeguard the investment. The evidence amply sustains the referee in such finding. At that time the property was appraised at over $40,000, or more than double the loan. The title was examined and approved

by counsel for the trustees. The borrower and bondsman was a coal dealer · having his place of business upon the premises. It is not claimed that there was any negligence or failure of duty in making the loan or in instituting the foreclosure proceedings, or in bidding in the property on the sale for the benefit of the estate, but it is claimed on the part of the appellants that the property was not disposed of within a reasonable time by the trustees who had bid in the same, and that the trustees were neglectful of their duty in not disposing of the property for a greater sum than was realized thereon. After the property was bid in by the trustees it was for a time leased at $1,000 and afterwards for $2,000 per annum. The referee held that following the panic of 1873 there was a serious depression of all real property, and there was no evidence that the $17,000, the sale price obtained for said property by the trustees in January, 1889, was less than the value of the property, and that there was no abuse of discretion or lack of diligence on the part of the trustees in conducting the foreclosure proceeding and in holding the property from 1878 to the time of sale in January, 1890. The learned referee justified his refusal to surcharge the income herein with the amount of loss upon said investment upon the ground, *first*, that the trustees presumably did their duty and also that by reason of the great depression in values from 1878 to 1888 it did not appear to the satisfaction of the referee that the property was sold for less than its full value. Two witnesses were sworn in plaintiffs' behalf as to the value of said property. The first witness, one Rustin, testified that he had been engaged in the real estate business in the vicinity of the property in question for forty-eight years, and that he had been familiar with values of real estate in that vicinity since 1875. He testified that the Gowanus canal property in question in 1875 was worth $41,880, and that the rental value was $2,000 per annum; that the property was worth the same amount in 1880, and that at any time between 1880 and 1884 the property could have been sold for approximately $40,000. This was purely opinion evidence on the part of the witness. Edward H. Litchfield, a large property owner in that vicinity, and who, in fact, owned land immediately across the canal from the

property in question, testified that the property was worth $5,000 per lot, and that on or about August 3, 1886, a parcel of about two-thirds the size of the property involved herein was sold by his father for $29,214. The witness Litchfield and his father owned 600 or 700 lots in the immediate neighborhood, and but the single instance of a sale during the period when the trustees held said real estate is mentioned to corroborate the opinion of the witness as to value. Notwithstanding such testimony, I do not think it satisfactorily appears that a sale of the property could have been made at any time while the trustees held title thereto at a greater price than was eventually obtained therefor. Of course, the law is well settled that the trustees were unauthorized to indefinitely hold this real property as an investment of trust funds, and it was their duty to move with reasonable diligence to sell the property and reduce it to securities permitted by law for the investment of trust funds. The presumption is that they acted with due diligence. They held the property during a period of great and continued depression in real estate values following the panic of 1873. They placed the property in the hands of reputable real estate agents for sale, and in the meantime received a good income therefrom by way of rentals. I do not think the conduct of the trustees was so negligent in the absence of more direct proof than the record affords, to require that the account should be surcharged by crediting to principal the amount of the loss sustained.

The only remaining question to be considered is as to the referee's conclusion that the entire proceeds from the sale of the Bloomingdale lots should be credited to capital, and that the life tenant was not entitled to any part thereof as income. The life tenant appealed from that portion of the judgment entered in conformity with such finding of the referee. I think the referee properly disposed of that matter. It was the contention of the appealing life tenant that the proceeds received from the deferred sales of the Bloomingdale lots should be so divided between capital and income that a sum which would have been sufficient if invested at four per cent interest in December, 1874, immediately following the partition of the estate, to produce the sum in the hands of the trustees at the time of such sale after, deducting expenses, should be

credited to capital and that the remainder should be credited to income. This contention is upon the theory that the careful management of the estate by the trustees and their delay in selling the property resulted in a great appreciation in value; that the life tenant suffered by such delay in converting said realty in that during all the years they held the property in anticipation of an increase in value they realized little or no income therefrom; and that equitably they should now share in the appreciated value that resulted from holding the property. In support of such claim the personal representatives of the said defendant, appellant, cite and rely upon *Lanier* v. *Taylor* (186 App. Div. 271); *Lawrence* v. *Littlefield* (215 N. Y. 561), and *Spencer* v. *Spencer* (219 id. 459). In each of those cases there was an absolute trust in conversion, and an equitable conversion of the real estate into personalty. Under the will of William P. Furniss, deceased, no such trust in conversion was intended. The power of sale was not mandatory, but discretionary. The testator's estate at the time of his death was invested in a manner evidently entirely to his satisfaction. So far as appears, ample provision was made for the needs of the family and there was the prospect of an increase in value. In his will he made no direction to his executors to change any of his investments. Such powers of sale or to mortgage or lease his property as the testator's will contained were apparently intended as an assistance to the executors and trustees in their management of the estate. The will did contain a power of sale, but it was carefully worded and was to be exercised or not according to the discretion of the trustees. This court held in *Patterson* v. *Vivian* (*supra*) that where testamentary trustees having a *discretionary power of sale*, after holding the lands, sold them at an increased value, appreciation is not income payable to the *cestuis que trustent*. With reference to the unproductive property included in the trust estate this court said in that case, at page 605: " The Columbus avenue lots formed a part of the general estate of the testator, left to his executors in trust with the power of sale to be exercised in their discretion, and until sold remained a part of the capital of the estate. Appreciation in value is not income. The *cestuis que trustent* have not contributed the taxes, as is contended,

because they were entitled only to what was left after the payment of such taxes."

In withholding the Bloomingdale property for an average period of over twenty years, the daughters as trustees of their respective shares pursued a policy concurred in by all. Of the several parcels of said property forming a part of the trust estate of the daughter Margaret, she enjoyed for thirty-three years the income upon the increased value of the parcel of said real property sold in 1885, and for twenty years she enjoyed the increased income from the property sold in 1897; for nineteen years she enjoyed the increased value of the lands sold in 1899, and for sixteen years prior to her death she enjoyed the increased value received from the sale of the last parcel in 1902. It, therefore, appears that the appealing defendant substantially profited by the delay in disposing of the real property. I know of no equitable reason why now for the benefit of entire strangers in blood to the testator, William P. Furniss, the proceeds from the sale of said real property should be encroached upon. The plaintiffs are the sole surviving descendants of the testator and are entitled to the remainder of the trust estate of the testator's daughter Margaret. As before stated, the authorities relied upon in support of the claim of the defendant, appellant, are based upon the case of an absolute trust in conversion. In *Spencer* v. *Spencer* (219 N. Y. 459, 465), Judge CUDDEBACK said: " In *Lawrence* v. *Littlefield* this court said: ' The legal question presented by the complaint and demurrer is whether under a will creating a trust of unproductive real estate, income payable to a life beneficiary and remainder to others, with an imperative power of sale and equitable conversion of the real estate into personalty at the death of the testator, with actual sale and conversion accruing only after a considerable delay, the testator will be held to have intended that the proceeds thus and when realized shall be apportioned between income payable from the time of his death to the life beneficiary and principal belonging to the remaindermen, or whether he is to be assumed to have intended that the proceeds thus realized should be treated wholly as principal with income payable thereon to the life beneficiary only from the date of actual conversion ' (p. 567)."

The Court of Appeals held that there was an absolute trust in conversion of the Williamsbridge farm. Such conversion the court deduced not only from the 3d clause of the will which specifically provided for a sale of said farm and that seventy-five per cent of the proceeds of testator's interest therein should become a part of the composite trust fund, but also from the situation of testator's property, the relative value of its different portions, and the condition and requirements of the beneficiary. The Court of Appeals then said: " The sixth clause of the will gives the residuum of the estate to the trustees named in trust to invest and reinvest the same and pay the income to the widow as directed. It seems quite plain that the testator did not intend to have this unproductive Williamsbridge farm go permanently to make up the composite trust fund. The third paragraph of the will shows that he expected to dispose of the farm before he died, or that his trustees would sell it soon after his death. He had owned the farm for some five years at the date of the will, and he knew something of the cost of carrying it. To give his widow the income from the unproductive farm would be somewhat of a mockery. That would be to place in the composite trust fund an investment which would not only consume all the income, but in the end would consume the principal of the fund. The farm, while owned by the trustees, would be considered and treated apart from the trust fund."

The beneficiary of the trust fund, testator's widow, asked that the trustees be directed to charge the taxes and carrying expenses of the Williamsbridge farm against the principal of the trust estate and not against income. The trial court held adversely to the beneficiary and the court was affirmed by the Appellate Division (169 App. Div. 54). The Court of Appeals directed a modification of the judgment so as to adjudge that the taxes and carrying charges of the Williamsbridge farm should be transferred from income to principal account and that the amount theretofore deducted from income of the trust estate to meet such taxes and carrying charges should be paid to the beneficiary and that future charges of the same nature should be dealt with in like manner.

In the will now under consideration there is no " imperative power of sale and equitable conversion of the real estate

into personalty at the death of the testator," as was the case in *Lawrence* v. *Littlefield (supra).* The will of William P. Furniss provided: " That all powers herein given are intended to be discretionary and to be exercised or not as the said executors or trustees shall think proper." With this clause in the will it is difficult to see how it can be said that there is an absolute direction in conversion in this will. The determinative feature in each of the authorities cited in behalf of the defendant, appellant, is the existence of an absolute trust in conversion. The case of *Matter of Rogers* (22 App. Div. 436) is cited in behalf of the defendant, appellant, wherein Mr. Justice CULLEN said: " Why should the life tenant fast for twenty-five years that the remainderman may feast at the end of that period? Why should each not have exactly his own, so far as it is possible to ascertain it?"

But immediately following the language thus quoted, Mr. Justice CULLEN says: " The value of the *corpus* may be increased by the appreciation in the value of the subject of the trust. A piece of real property, devised in trust, might greatly rise in value and of this the remaindermen would get the full benefit."

I think the referee properly held that the life tenants were not entitled to share in the avails of this real property, and that when the same was disposed of it was the duty of the trustees to hold and invest the same and receive the income therefrom, and that at the ending of the trust the entire proceeds were properly regarded as capital.

I, therefore, conclude that the judgment appealed from should be modified so as to require a restatement of the account in behalf of the deceased trustee so as to increase the amount credited to principal and diminish the amount credited to income:

1. In respect to the encroachments upon the corpus of the estate to the amount of premiums paid upon bonds purchased as an investment of trust funds, as shown by the 13th, 14th, 15th, 16th and 17th findings of fact of the referee.

2. That there should be credited in said restated account to principal the sum of $40,760.90, and the amount credited to income be diminished in that amount, in accordance with the statement contained in the 41st finding of fact, for taxes

and water rates paid upon the Bloomingdale lots by the said trustee while the same were held as a part of the trust for the benefit of Margaret E. Zimmerman.

3. That the amount credited to principal should be increased in the sum of $2,556.70, as interest upon taxes and assessments paid by the trustees, and the amount credited to income be diminished to that extent.

That the judgment, excepting as so modified, should be affirmed, without costs to either party as against the others.

CLARKE, P. J., and PAGE, J., concur; SMITH, J., concurs in result.

LAUGHLIN, J. (concurring in part and dissenting in part):

I think that *Spencer* v. *Spencer* (219 N. Y. 459) is authority for charging the taxes to the principal and for permitting the life tenant to share in the proceeds of the sale of the Bloomingdale lots, and that the taxes should be so charged and the life tenant should be permitted so to share, and, therefore, as to those matters, I dissent, but on all other points I concur in the opinion of Mr. Justice MERRELL.

Judgment modified as directed in opinion and as so modified affirmed, without costs. Settle order on notice.